# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
November 20, 2002 Session

## DEBORAH BOWERS SMITH v. RILEY DEAN SMITH

**A Direct Appeal from the Chancery Court for Gibson County**
**No. H4486    The Honorable George Ellis, Chancellor**

---

### No. W2002-00477-COA-R3-CV - Filed January 15, 2003

---

This is an appeal of a final decree of divorce and the order of the trial court on the moton to alter or amend, involving issues of division of marital property, alimony *in futuro*, contempt of court, and injunctive relief for Wife's alleged harassment of Husband.  Husband appeals.  We affirm in part, reverse in part, and remand.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Affirmed in Part, Reversed in Part, and Remanded

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY KIRBY LILLARD, J., joined.

C. Timothy Crocker, Michael A. Carter, Milan, For Appellant, Riley Dean Smith

Mary G. Middlebrooks, Jackson, For Appellee, Deborah Bowers Smith

### OPINION

Deborah Bowers Smith ("Ms. Smith," "Appellee," or "Wife") and Riley Dean Smith ("Mr. Smith," "Appellant," or "Husband") were married on July 24, 1977.  There are two children born of the marriage, Brentley Dean Smith (d/o/b January 20, 1978) and Brooke Deanna Smith (d/o/b July 17, 1984).  Ms. Smith  filed a complaint for Absolute Divorce on February 8, 2001, citing irreconcilable differences and marital misconduct on the part of Mr. Smith.  She filed an Affidavit in support of her Complaint on February 15, 2001.  The Affidavit reads in pertinent part as follows:

> 1.  That my gross income from my employment with Gibson County School System is approximately $2,904.50 per month; net income is approximately $1,936.22 per month.
>
> 2.  That I have no additional sources of income.

\*　　　　　　　　　　　\*　　　　　　　　　　　\*

4. That [Mr. Smith's] gross income from his employment with Jones Company, Ltd. is approximately $13,531.26 per month ($162,375.22 for year 2000).

Attached to this Affidavit was an exhibit listing monthly household expenses, which totaled $7,024.55.

Mr. Smith filed an Answer and Counter-Complaint on February 23, 2001, alleging inappropriate marital conduct on the part of Ms. Smith. The Counter-Complaint further stated that:

5. [Mr. Smith] avers that [Ms. Smith] is calling him at all hours of the day and night, harassing him, making threatening statements including, but not limited to, taking the parties' minor daughter and moving out of State in order to prevent him from having a relationship with his daughter and threatening to kill him and herself.

\*　　　　　　　　　　　\*　　　　　　　　　　　\*

[Mr. Smith prays:] That a Restraining Order issue, enjoining [Ms. Smith], her agents or anyone acting in her behalf, from coming about, telephoning, threatening, harassing, bothering, or having any contact with [Mr. Smith], either at his residence or his workplace, except as it relates to visitation issues concerning the parties' minor daughter, and from removing the parties' minor daughter from the jurisdiction of this Court, during the pendency of this cause.

The chancellor entered a Temporary Restraining Order on February 23, 2001 and set a hearing for March 20, 2001 to determine whether a Permanent Injunction should be issued. On March 20, 2001, a hearing was held on motions for temporary child support and alimony *pendente lite* filed by Ms. Smith and on the Temporary Restraining Order granted to Mr. Smith. An Order was entered on April 27, 2001, which dissolved the Temporary Restraining Order and ordered Mr. Smith to pay alimony *pendente lite* to Ms. Smith in the amount of Five Hundred Dollars ($500) per month. Mr. Smith was also ordered to maintain all health insurance, marital debts, and mortgage payments pending a hearing of the case. A Temporary Parenting Plan was entered on April 27, 2001, requiring Mr. Smith to pay Nine Hundred Dollars ($900) per month in child support.

On April 24, 2001, Ms. Smith filed a Motion for Provision of Vehicle, which states in pertinent part:

1. That Defendant, Riley Dean Smith, was providing [Ms. Smith] with a 2000 Volvo and paying the lease payments on said vehicle by Court Order.

2. That [Ms. Smith] was involved in a motor vehicle accident, which totaled the Volvo.

3. That [Mr. Smith] has refused to provide [Ms. Smith] with a comparable vehicle.

THEREFORE, [Ms. Smith] moves this Honorable Court as follows:

1. That [Mr. Smith] be required to provide [Ms. Smith] with a vehicle comparable to a 2000 Volvo.

On May 18, 2001, a status hearing was held. An Order was entered on May 31, 2001, which granted Mr. Smith's Interlocutory Appeal, set Ms. Smith's Motion for Provision of Vehicle for hearing on June 12, 2001 and set the matter for trial on August 15, 2001 due to the failure of mediation attempts. Ms. Smith filed a Motion for Civil Contempt against Mr. Smith on June 7, 2001, alleging, *inter alia*, that he had failed to provide her with a means of transportation and that he had failed to pay a cellular telephone bill.

On August 10, 2001, Mr. Smith filed a Petition for Restraining Order and Permanent Injunction, alleging that, since the Temporary Restraining Order had been dissolved, Ms. Smith had continued to harass and threaten him.

The non-jury trial was held on August 15, 2001. Prior to trial, the parties stipulated to grounds of adultery on the part of Mr. Smith. On September 28, 2001, Ms. Smith filed a Motion for Restraining Order, which reads in pertinent part as follows:

The Plaintiff, Deborah Bowers Smith, moves this Court for a Restraining Order. In support of said Motion, the Plaintiff would show as follows:

1. That Plaintiff is informed, and therefore believes, that the Defendant, Riley Dean Smith, has been terminated from his employment with The Jones Company.

2. That Plaintiff is informed, and therefore believes, that Defendant now has in his possession all liquid assets from his retirement fund with The Jones Company.

3. That Plaintiff is informed, and therefore believes, that Defendant received a substantial severance package upon his termination of employment.

Chancellor Ellis issued a temporary Restraining Order on September 28, 2001, pending a hearing on Ms. Smith's Motion. A hearing was held on October 22, 2001. An Order for Absolute Divorce was entered on November 21, 2001. The Order reads in pertinent part as follows:

...After statement of counsel, testimony of certain witnesses, submission of certain exhibits, and upon the entire record, the Court issued its ruling, as follows:

\*                              \*                              \*

The Court finds there is a great disparity in the incomes of the parties, with Mr. Smith's income for the last three years being $151,670.28, $188,800.65, and $162,375.22, and that for the first seven months of this year his income has been $127,990.40. Deborah Bowers Smith's income as a teacher is $34,854.

The Court finds that the parties have $407,056 in debt and that $336,000 of this is in real estate, leaving a consumer debt in the amount of $71,056. The Court finds that Deborah Bowers Smith as of this year makes about 16 percent of the income of Riley Dean Smith, and therefore, she shall be ordered to pay the debt to UP Bank in the amount of $2,000, a debt to David Bowers in the amount of $5,225, and a Mastercard bill in the amount of approximately $1,150, $1,100 to Summit Vacuum and $1,000 to Service Merchandise. Riley Dean Smith is ordered to pay the remaining marital debts as listed on the exhibits.

\*                              \*                              \*

As to the question of alimony in futuro, the Court finds that the standard of living enjoyed by the Smiths was a good one, above average, and that Riley Dean Smith's actions, as he stipulated to, has [sic] caused the rupture of this marriage. And to force Deborah Bowers Smith to a lower standard of living because of the infidelity of Riley Dean Smith would not be consistent with the laws of the State of Tennessee, and, therefore, alimony in futuro is ordered to be paid by Riley Dean Smith in the amount of $3,000 per month to Deborah Bowers Smith until her death or remarriage.

       \*                       \*                     \*

The Court further finds that Riley Dean Smith was in contempt of Court by not replacing the leased vehicle that was wrecked, but, however, he did provide Deborah Bowers Smith with a vehicle, and the Court is going to tax attorney's fees and costs for this matter as the only sanction that's brought against Riley Dean Smith

     \*                       \*                     \*

IT IS THEREFORE ORDERED:

     \*                       \*                     \*

3.  That Husband shall receive the real property located at 168 Pleasant Hill Road, Humbolt, Gibson County, Tennessee...one-half (½) of Jones Retirement Account ($144,407.36); one-half (½) of Phantom Stock ($109,158.50)...

4. That Wife shall be awarded...one-half (½) of Jones Retirement Account ($144,407.36); one-half (½) of Phantom Stock ($109,158.50)...2000 Dodge automobile...

     \*                       \*                     \*

10.  That Husband shall pay to Wife as alimony in futuro the sum of $3,000 per month, beginning September 1, 2001, and the first day of each month thereafter.  Said alimony shall be payable until the remarriage or death of Wife.

     \*                       \*                     \*

13.  That Husband shall pay as alimony in solido, the sum of $7,988.09 toward Wife's attorney fees, to Wife's attorney of record, Middlebrooks & Gray, P.A....

On November 21, 2001, Mr. Smith filed a Motion to Alter or Amend the Judgment. Mr. Smith also filed a Motion for Clarification concerning his ability to use his severance package from Jones to pay expenses.

On December 6, 2001, Ms. Smith also filed a Motion to Alter or Amend, which reads in pertinent part as follows:

3. That Wife was awarded one-half (½) of the Phantom Fund with a value of $109,158.50. Husband lost the Phantom Fund when he was terminated for wilful misconduct from his employment with The Jones Company. Therefore, Wife's one-half (½) of this fund should be taken from Husband's one-half (½) of the Jones Retirement Fund.

Following a hearing on all motions on December 11, 2001, the chancellor entered an Order February 8, 2002, which reads in pertinent part as follows:

ORDERED:

1. That the Defendant's [Riley Dean Smith's] Motion to Alter or Amend is denied.

\*                                   \*                                   \*

3. That the Plaintiff's [Deborah Bowers Smith's]...Motion to Alter or Amend regarding the loss of the Phantom stock is granted. Plaintiff shall be awarded the sum of $109,158.50 from the Defendant's one-half (½) of The Jones Retirement Fund in order to compensate her for the loss of one-half (½) of the Phantom stock.

4. That the Motion for an award of additional fees and costs in the amount of $3,211.35 is granted. Defendant shall pay as alimony in solido, said sum to Plaintiff's attorney of record, Middlebrooks & Gray, P.A....

5. That the Plaintiff's Motion for Discretionary Costs is granted in the amount of $665.95 for court reporter fees. Defendant shall pay as alimony in solido said sum to Plaintiff's attorney of record, Middlebrooks & Gray, P.A.

A Qualified Domestic Relations Order was entered on February 19, 2002. Mr. Smith filed Notice of Appeal on February 21, 2002. Pending appeal and pursuant to Tenn. R. App. P 62.03, Mr. Smith filed a Motion and Memorandum of Law to Stay Execution of Qualified Domestic Relations Order on March 13, 2002. The Motion to Stay Execution of Qualified Domestic Relations was heard on April 4, 2002. The Motion was denied by Order entered on May 1, 2002.

Mr. Smith appeals, raising four issues for our review as stated in his brief:

I. The trial court erred by failing to equitably divide the marital property and marital debts.

II. The trial court erred in its award of alimony *in futuro*.

III. The trial court erred by holding Defendant Riley Dean Smith in contempt for not providing Deborah Bowers Smith with a comparable vehicle to replace the vehicle she intentionally wrecked.

IV. The trial court erred by failing to permanently enjoin Wife from harassing Husband.

## The trial court erred by failing to equitably divide the marital property and marital debts.

As part of his compensation package from The Jones Company, Mr. Smith owned phantom stock, which was valued at $218,0000 at the time of trial but was unvested. In addition to the phantom stock, Mr. Smith had a retirement plan with Jones, which was vested. The chancellor's initial order divided both the value of Mr. Smith's retirement account and the phantom stock evenly. Following this initial division of property, Jones terminated Mr. Smith's employment for cause. Because it was not vested, the phantom stock evaporated upon Mr. Smith's termination.

Both parties filed motions to alter or amend, which were heard on December 11, 2001. Following that hearing, the chancellor awarded Ms. Smith $109,158.50 from Mr. Smith's one-half of The Jones Company retirement account to compensate her for the loss of the value of the phantom stock. Consequently, Mr. Smith kept $35,248.86 of his Jones Retirement Plan, while Ms. Smith received $253,565.86.

Before addressing Mr. Smith's argument, we note that, although there is a presumption that marital property is owned equally, there is no presumption that marital property should be divided equally. ***Bookout v. Bookout***, 954 S.W.2d 730, 731 (Tenn. Ct. App. 1997). Thus, an equitable division of the marital property need not be an equal division of property. ***Id.*** A trial court is afforded wide discretion when dividing the marital property, and its distribution will be given "great weight" on appeal. ***Ford v. Ford***, 952 S.W.2d 824, 825 (Tenn. Ct. App. 1997). Guidelines for the equitable division of marital property are set forth in T.C.A. § 36-4-121 (Supp. 2002), which provides, in relevant part:

> (a)(1) In all actions for divorce or legal separation, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just.
>
>    *       *       *

-7-

(c)In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Mr. Smith argues that the trial court considered Mr. Smith's marital fault in dividing the stock and retirement plan, thus violating T.C.A. § 36-4-121 (a)(1). Before addressing Mr. Smith's issue, we first note that T.C.A. § 36-4-121 (a)(1) only forbids consideration of marital fault, that is the fault that led to the dissolution of the marriage. However, there is nothing in the language of the statute to indicate that the court may not consider other types of fault in its

division of property.   In fact, T.C.A.§ 36-4-121(c)(5) specifically allows a court to consider the contribution a party has made to the dissipation of marital property. We now turn to the record in this case, which reads in relevant part:

> THE COURT: ...the fact that Mr. Smith's inappropriate behavior at work with the same woman who caused this divorce, or about the same woman, certainly works at an inequitable disadvantage to Mrs. Smith, so I'm going to grant that the value of the phantom fund be deducted from the retirement.

> \*                                    \*                                    \*

> MS. MIDDLEBROOKS [counsel for Ms. Smith]: They've frozen the retirement fund.

> THE COURT: It has not been distributed?

> MS. MIDDLEBROOKS: No, sir.

> THE COURT: As far as that, the [$]109,000 will go to Mrs. Smith to make up the loss due to his inappropriate behavior.

> \*                                    \*                                    \*

> MR. CROCKER [counsel for Mr. Smith]: Your Honor, please, the award by the Court effectively giving her credit for the phantom stock, one half of that?

> THE COURT: The Court gave her one half, and your client–the Court is ruling that he had given her one half, and it was lost *only* because of your client's behavior since the divorce.  So yes, sir, that's what the Court has ruled.

> \*                                    \*                                    \*

> MR. CROCKER: The Court has ruled that the net effect of that is going to be that Mrs. Smith has a retirement of [$]253,000–

> THE COURT: No.  The net effect is that the Court is ruling that Mrs. Smith shall get the same amount she got the day of the divorce, and it's Mr. Smith's conduct that has brought us to this point*.*

> \*                                    \*                                    \*

MR. CROCKER: But the net effect of the bottom line is that she's going to end up with about [$]300,000 in retirement, and he's going to end up with [$]35,000 approximately, and I would respectfully submit that that's not an equitable division.

THE COURT: Well, what about your client's conduct? That's where we are. That's why we had the divorce; that's why you're back today. If there's any reason, it's due to your client's conduct.

Although phrases such as "because of your client's behavior since the divorce" point to a type of fault that the court may consider in dividing the marital assets, the majority of the relevant passages cited above indicate that it is marital fault that is the gravamen of the trial court's decision. Because we find that the trial court's division of the phantom stock was based upon consideration of Mr. Smith's marital fault, and that such consideration was in direct violation of T.C.A. § 36-4-121 (a)(1), we must hold that the division constitutes an abuse of discretion.

However, even if we are mistaken that the chancellor's decision was based upon Mr. Smith's marital fault as opposed to his fault in losing his job, we would nonetheless conclude that the evidence that came into existence after the trial is not to be considered when deciding a Tenn. R. Civ. P. 59 motion.[1] The purpose of a Tenn. R. Civ. P. 59 post-trial motion is to prevent unnecessary appeals by giving the trial court the opportunity to correct errors which occur before the entry of a judgment. In ***Chadwell v. Knox County,*** 980 S.W.2d 378 (Tenn. Ct. App. 1998), the Court said:

> The motion to alter or amend allows the trial court to correct any error as to the law or facts that may have arisen as a result of the court overlooking or failing to consider matters.

*Id.* at 383.

The final decree entered after the evidentiary hearing awarded one-half of the phantom stock to each of the parties. The decision conformed to the mandate of T.C.A. § 36-4-121(b)(3)(C), that the property divided be "valued as of a date as near as reasonably possible to the final divorce hearing date."

In this case, there are no allegations of error in the Chancellor's initial dealing with the facts presented at the hearing. Rather, Ms. Smith's Motion to Alter or Amend concerning the

---

[1] For clarification, we quickly note that we are not addressing newly discovered evidence in this case. Here, the fact at issue, Mr. Smith's loss of employment with Jones, actually came into being after the hearing. Newly discovered evidence, on the other hand, is that evidence which is in existence at the time of trial but is not ascertained at that time.

Phantom stock is predicated upon a fact that came into existence after the hearing, to wit Mr. Smith's termination from Jones, which fact shall not be considered in altering or amending the original Order of November 21, 2001.

The November 21, 2001 Order awarded one-half of the Phantom stock and one-half of the Jones Retirement Account to each party, and awarded Ms. Smith the entire Horace Mann Annuity and the entire TCRS Account. From the evidence presented at the August 15, 2001 hearing and from the record up to and including that date, we find that this was an equitable division of the property. Having stated *supra* that Mr. Smith's loss of employment and/or his fault in that termination is a post-hearing fact, which should not be considered on a Tenn. R. App. P. 59 motion, we must reverse the February 8, 2002 order so that the division of retirement accounts is in line with the original Order of November 21, 2001. To affirm the February 8, 2002 Order of the trial court, would be to award Ms. Smith the following in terms of division of the retirement accounts:

> $253,565.86 = Ms. Smith's award of one-half the Jones Retirement Plan ($144,407.36) + $109,158.50 of Mr. Smith's half of the Jones Retirement Account to compensate Ms. Smith for the loss of the Phantom stock.
>
> $32,636.30 = Total Horace Mann Annuity
>
> $30,223.12 = Total TCRS Account
>
> **Ms. Smith's Total = $316,425.28**

Mr. Smith's share of the retirement accounts would be $35,238.86, which is his half of the Jones Retirement Fund minus $109,158.50 to compensate Ms. Smith for the loss of the Phantom stock. In short, Ms. Smith would receive almost nine (9) times the amount Mr. Smith receives in division of the retirement funds. Since the November 21, 2002 Order gave Ms. Smith only 1.25 times the amount Mr. Smith received in division of retirement funds, we find the February 8, 2002 division inequitable, particularly in light of the fact that Ms. Smith has been awarded $3,000 per month in alimony *in futuro*, and that Mr. Smith has been awarded the bulk of the marital debts. The trial court erred in amending the division of marital property.

### The trial court erred in its award
### of alimony *in futuro*

Guidelines for the determination of alimony are set forth in T.C.A. § 36-5-101(d), which reads in pertinent part as follows:

> (d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be

rehabilitated whenever possible by granting of an order for the payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C)The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including tax consequences to each party, as are necessary to consider the equities between the parties.

Although the law clearly favors rehabilitative alimony, we recognize that a trial court has wide discretion in determining whether an award of alimony should be rehabilitative or *in futuro*. Appellate review of findings of fact by the trial court are *de novo* upon the record accompanied by a presumption of the correctness of the findings. ***See*** Tenn. R. App. P. 13(d). ***See also Hanover v. Hanover***, 775 S.W.2d 612, 617 (Tenn. Ct. App.1989) (holding that the amount of alimony awarded is largely a matter left to the discretion of the trial court, and the appellate courts will not interfere except in the case of an abuse of discretion). The trial court is required to consider the factors, *supra*, set forth at Tenn.Code Ann. §36-5-101(d)(1)(A)-(L).

In its Order for Absolute Divorce, the trial court ordered Mr. Smith to pay Ms. Smith $3,000 per month in alimony *in futuro*. The trial court's decision was based upon its finding that there is a great disparity in the incomes of the parties, with Ms. Smith making about 16% of Mr. Smith's salary. The trial court also noted that the Ms. Smith enjoyed a high standard of living, which should not be disturbed because of Mr. Smith's infidelity. We find ample evidence in the record to support the trial court's findings. In addition, the trial court noted in its Order that it had reviewed the entire record in this matter. The record indicates that Mr. Smith and Ms. Smith were married for twenty-four years. Ms. Smith is forty-three years old. She has a Master's Degree, and is employed as a school teacher. Additionally, there is testimony that Ms. Smith suffers from a genetic heart condition, spastic colon, and migraine headaches. Because of her profession, which is woefully underpaid, her age, her education, her health, her standard of living, and the disparity between the parties' respective earning potentials, we hold that the award of alimony *in futuro* was predicated upon a finding that Ms. Smith cannot be economically rehabilitated. T.C.A. § 36-5-101(d)(1). A review of the entire record indicates that the trial court did not abuse its discretion in awarding alimony *in futuro* in the amount of $3,000 per month.

**The trial court erred by holding Defendant Riley Dean Smith
in contempt for not providing Deborah Bowers Smith
with a comparable vehicle to replace the vehicle
she intentionally wrecked.**

During the marriage, the parties leased a 2000 Volvo automobile for Ms. Smith's use. The vehicle leased for $700 per month. On March 24, 2001, Ms. Smith was involved in a one-

vehicle accident, which totaled the Volvo.[2]   On April 24, 2001, wife filed a Motion for Provision of Vehicle, requesting a vehicle comparable to the 2000 Volvo.  The trial court entered an Order on April 27, 2001 on several temporary issues.  Husband was ordered to "maintain all of the health insurance, all of the marital debts and the mortgage payments pending hearing on this case."  The trial court's Order makes no reference to Ms. Smith Motion for Provision of Vehicle and does not order Mr. Smith to procure a comparable vehicle for Ms. Smith.

Ms. Smith argued that the lease on the vehicle should be included in the term "marital debts."  While we agree that the $700 per month lease amount should have been included in marital debts, we note that that particular debt was paid when the insurance company covered the loss of the Volvo.  Since that marital debt was paid, Mr. Smith had no further obligations to maintain it.  And since the court never issued a mandate that Mr. Smith was to purchase another Volvo, Mr. Smith cannot be held in contempt for failure to do so.  In fact, we find that Mr. Smith did more than the court required when he gave Ms. Smith use of his daughter's vehicle and purchased a used Mazda for his daughter to replace the vehicle given to Ms. Smith.

For the foregoing reasons, we reverse the Order of the trial court finding Mr. Smith in contempt and the punishment therefor.

### The trial court erred by failing to permanently enjoin Wife from harassing Husband.

On February 23, 2001, the trial court issued a Temporary Restraining Order, which enjoined Ms. Smith from harassing Mr. Smith.  This order was dissolved on April 27, 2001 at which time the court noted that there was a mutual restraining order in the parenting plan that would apply to both parties.

In his testimony, Mr. Smith alleged that Ms. Smith made harassing phone call to his home and work.  From our review of the record, we find that Mr. Smith has now obtained an unlisted telephone number and that he is no longer employed by Jones.  These changes, in conjunction with the mutual restraining order in the parenting plan, render this issue moot and, therefore, without merit.

In sum, the order of the trial court amending the division of marital property is reversed, and the final decree of the court, as to the division of marital property and the award of alimony *in futuro,* is affirmed.  The order of the trial court holding appellant in contempt of court and the punishment therefor is reversed.  The order of the trial court denying injunctive relief to appellant is affirmed.  The case is remanded to the trial court for such further proceedings as may be necessary.  Costs of the appeal are assessed one-half to appellant, Riley Dean Smith, and his surety, and one-half to appellee, Deborah Bowers Smith.

---

[2] Mr. Smith alleges that Ms. Smith intentionally wrecked the vehicle.  However, upon review of the entire record, we do not find by a preponderance of the evidence that the accident was intentional.

_____
W. FRANK CRAWFORD, PRESIDING
JUDGE, WESTERN SECTION