IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 10, 2004

## ALICE FAY SMILEY, ET AL. v. ROBERT STEVEN SMILEY, ET AL.

Appeal from the Fourth Circuit Court for Davidson County
No. 01D-2320     Muriel Robinson, Judge

No. M2002-03060-COA-R3-CV - Filed February 2, 2005

Husband appeals a trial court judgment awarding permanent alimony to the Wife, asserting in the appeal that the evidence preponderates against the judgment of the trial court. We affirm the action of the trial court.

**Tenn. R. App. P 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., and FRANK G. CLEMENT, JR., J., joined.

Philip E. Smith and Clark Lee Shaw, Nashville, Tennessee, for the Appellant, Robert Steven Smiley.

Thurman T. McLean, Jr., Madison, Tennessee for the Appellee, Alice Fay Smiley.

### OPINION

Robert Steven Smiley and Alice Fay Smiley were married November 5, 1973, at the ages of 18 and 19 years respectively. Wife was a waitress at Shoney's restaurant at the time with a tenth-grade education. Husband was unemployed most of the time between 1973 and 1979 during which time the Wife primarily generated the income for the family, bore the parties' three children and was their primary care giver. In 1979 Wife went to work for Nicholstone Bindery as a machine operator remaining so employed until 1990. In the mid-1980s Husband started a pest control company with his father who died in 1988. Following a dispute with his family over the pest control business, Husband and Wife determined to start such a pest control business together. At the outset of the business Wife continued her work with the Nicholstone Bindery, but by 1990 the pest control business had flourished to the point that Wife became employed in the business on a full-time basis. For the next eight years the parties continued to build on their very successful pest control business with Husband running the field services portion of the business and Wife being the office manager. The parties had some kind of disagreement in 1998 after which Wife continued to draw salary from the business but did little work. From October 28, 1998, until October of 1999 she drew a salary of $2,800 a month, then from October of 1999 to October of 2000 drew a salary of $2,900 per month, and thereafter until October of 2001 drew a salary of $3,600 per month. During this time Husband

was drawing a much higher salary with that salary at the time of the final hearing in this case being $11,800 per month.

Wife filed suit for divorce on September 18, 2001, alleging inappropriate marital conduct and asserting that all the children of the marriage were emancipated. Husband answered on October 10, 2001, denying the allegations of inappropriate marital conduct and acknowledging that none of the children were minor children. By agreed order entered October 11, 2001, the parties agreed that Husband would pay to Wife temporary alimony in the amount of $2,900 per month in two equal installment of $1,450 per month on the first and fifteenth of each month beginning November 1, 2001. Immediately prior to the hearing on November 5, 2002, Husband stipulated pursuant to Tenn. Code Ann. § 36-4-129(b) that he had committed acts of inappropriate marital conduct and that Wife was entitled to an absolute divorce on such grounds.

After the hearing of November 5, 2002, the trial court entered its final decree of divorce on November 18, 2002. The court granted divorce to the Wife on grounds of inappropriate marital conduct, divided the marital property of the parties awarding the Wife $203,500 such being one-half of the appraised value of the pest control business known as "Steve and Sons Pest Control, Inc." No complaint is made on appeal as to the division of marital property and the relevance of such division is limited to the effect thereof if any on the issue of Wife's entitlement to permanent alimony and attorney's fees. The only issue asserted on appeal is whether or not the evidence preponderates against the award by the trial court of permanent alimony.

In this respect the court held:

The Court further finds, that these parties have been married for twenty-nine (29) years and that due to the diligence and contributions of both parties that the parties have built a successful business known as "Steve and Sons Pest Control, Inc". The Court further finds that the parties have no existing retirement accounts. The Court finds that the Wife is forty-eight (48) and that the Husband is forty-seven (47) years old. The Court further finds that the Wife has no real marketable skills and that she is totally dependent at this time on spousal support from the Husband. The court further finds that rehabilitation is not feasible and that she has the need for alimony *in futuro* and the Husband has the ability to pay alimony *in futuro*.

. . .

**IT IS FURTHER ORDERED** that the Wife is awarded alimony *in futuro* in the amount of two-thousand nine-hundred ($2,900) dollars per month until her death or remarriage or pending further orders of the Honorable Court. **IT IS FURTHER ORDERED** that the alimony award shall begin on the first day of the month following the sale of the marital homeplace.

About the only thing remarkable in the testimony in this case is the marked difference between Husband's assertions in his answer deprecating the Wife's contributions to the business and his glowing testimony on November 5th as to the value of such contributions.

The legislature has provided the following guiding factors which the court is to apply in awarding alimony:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (C) The duration of the marriage;
> (D) The age and mental condition of each party;
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> (G) The separate assets of each party, both real and personal, tangible and intangible;
> (H) The provisions made with regard to the marital property as defined in § 36-4-121;
> (I) The standard of living of the parties established during the marriage;
> (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
> (L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

*See* Tenn. Code Ann. § 36-5-101(d)(1) (Supp.2002).[1]

---

[1] As a result of legislature amendments subsequent to the divorce decree, these factors are now listed in Tenn. Code Ann. § 36-5-101(d)(1)(E)(i-xii)(Supp.2004).

The trial court made its finding, and on appeal the burden rests on appellant to show that the preponderance of the evidence establishes that Wife is not entitled to alimony.

In dividing the marital property the trial court awarded the Wife something better than $200,000 as her one-half interest in the value of the business. Aside from working at Shoney's and on an assembly line, the 48-year-old Wife has no marketable skills. The allegations of Husband's pleadings to the contrary not withstanding, his own testimony shows that in the years when this business was expanding and flourishing, Wife was all but indispensable to the success of the business. Said Husband:

A. She implemented herself into the job, started policy on her own. I wasn't capable of doing it. I was not there. I was not capable of implementing office policy in an office where I wasn't gonna be at.

Q. Well, I mean --

A. I'm out in the field working and selling business and collecting, you know, the services rendered, setting up appointments in the field, relying on the person in my office to forward the phone calls to me so I could do this. I cannot be in the office when we just first started out implementing policy. She did that all on her own without any of my help. And she did a great job.

Q. Okay. That's what I was getting at. She did a great job; correct?

A. She did a wonderful job.

Q. In fact, she served -- however she got there, she served as office manager for Smiley -- for Steve-N-Sons; is that correct?

A. Oh, yes, sir, absolutely.

Q. She was responsible, when she went to work there in 1994, for getting out the billing every month, getting out the invoices.

A. Yes, sir.

Q. Posting the money when it came in; is that correct?

-4-

A.    Yes, sir.

Q.    She was responsible for implementing the office policy, for starting new files, for doing research on customers -- and explain to the Court what "research" in the pest control business means.

A.    Well, if anybody ever had to answer a telephone for a service company before, you certainly don't want to talk to any of your customers without knowing a little bit of history about them.  And that was one of the things that I hated mostly about the people that were answering the phones for me.  They would say, "Mrs. Smith is on, you know, line 2" -- and I believe you used the term a while ago -- no, maybe it was Mr. Thompson.  Anyway, you want to be aware, you want to be totally aware of what's going on before you go into the conversation.

      And, by doing that, if the customer has a history with us, you go to the file, and, unfortunately, you have to pull the physical history on 'em.  There's a graph of the property if it's a termite contract.  Or there's service tickets if it's a pest control contract.  The type of pesticides used, the last time we were there, and so on and so forth.

Q.    If there was a problem with that particular property, you would want to know about it --

A.    Exactly.

Q.     -- in quoting a price; correct?

A.    Exactly.

Q.    And she was responsible for doing all the research?

A.    Yes.

Q.    She was responsible at Steve-N-Sons group for the employees in the office; correct?

A.    My Wife implemented and set up the filing system for Steve-N-Sons and did a -- just a magnanimous job.  I couldn't have hired anybody to do a better job.

-5-

Q.      Well, the fact of the matter is, Mr. Smiley -- and this is what
        I'm trying to get at -- this business couldn't have grown to
        where it was right now without Ms. Smiley; correct?

A.      No, sir, it could not have.

The skills that she built up by her own initiative are not necessarily marketable in the marketplace.  She helped her Husband build a substantial business and while she received a handsome cash settlement for her part of the value of the business, the divorce leaves her with no earned income while the Husband taking the business himself earns therefrom $11,800 per month.  This was a 29-year marriage, and Wife is now approaching 50 years of age.  Husband maintains essentially his standard of living while Wife does not.  The divorce is after all the fault of the Husband.

While rehabilitative alimony is preferred where an economically disadvantaged spouse can be rehabilitated,  *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn.Ct.App. 1992); the trial court has found that rehabilitation is not feasible in the case.  Under such circumstances an award of alimony *in futuro* is justified.  *Compare Crabtree v. Crabtree,* 16 S.W.3d 356 (Tenn.Ct.App. 2000); *See* Tenn. Code Ann. § 36-5-101.  While the Supreme Court reversed such an award in Crabtree, the facts of that case are in sharp contrast to the facts in the case at bar.  Crabtree involved a 23-year marriage where Wife was awarded $373,000 in marital assets and left the marriage at age 43 blessed with a college education and licensed as a certified public accountant.  The finding in Crabtree by the trial court was that her rehabilitation was feasible.  In the case at bar, we have a 48-year-old Wife leaving the marriage with a tenth-grade education, very limited earning capacity and a finding by the trial court that rehabilitation was not feasible.

The evidence does not preponderate against the findings of the trial court.  *See* Tenn.R.Civ.P. 13(d).  As to the amount of alimony *in futuro*, the trial court awarded $2,900 per month, and the amount of such an award is largely discretionary with the trial court.  While the award in this case is perhaps generous, it cannot be said that the trial court has abused its discretion.  *Hanover v. Hanover,* 775 S.W.2d 612, 617 (Tenn.Ct.App. 1989); *Ingram v. Ingram,* 721 S.W.2d 262, 264 (Tenn.Ct.App. 1986).

Appellant seeks attorney's fees on appeal.  As he has not prevailed on any issue on appeal or otherwise shown himself entitled to attorney's fees, the request is without merit.

The judgment of the trial court is in all respects affirmed with costs assessed to appellant.  The case is remanded to the trial court for such further proceedings as may be necessary.

_____
WILLIAM B. CAIN, JUDGE