IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
MARCH 18, 2004 Session

## DONALD WESLEY EVANS v. PEGGY JANE EVANS

**Direct Appeal from the Chancery Court for Williamson County**
**No. 27910     Russ Heldman, Chancellor**

_____

**No. M2002-02954-COA-R3-CV - Filed July 6, 2004**

_____

This case arises from a divorce action between the Appellant and Appellee. After a hearing, the trial court divided the marital property, granted Appellee alimony *in futuro*, and awarded Appellee her attorney's fees. After denying Appellant's motion to alter or amend the judgment, the trial court increased Appellee's award of attorney's fees. Appellant appeals to this Court, and, for the following reasons, we affirm in part, modify in part, and remand for further proceedings consistent with this opinion.

**Tenn. R. App. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed as
Modified and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Sandra Jones, Nashville, TN, for Appellant

Judy A. Oxford, Franklin, TN, for Appellee

### OPINION

### Facts and Procedural History

Donald Wesley Evans ("Appellant") and Peggy Jane Evans ("Appellee") were married in Nashville, Tennessee, on September 28, 1974. At the time of trial, Appellant was 52 years old and Appellee was 50 years old. In addition, the parties have three children who were 19, 21, and 26 years old at the time of the hearing. Appellant is employed by Baptist Hospital earning $25 per hour and was formerly employed as a pharmacist until his license was lost due to depression and an addiction to prescription medication for relieving stress. Appellant testified that, at the time of trial, he was currently earning $52,000, but stated that he was due for a pay increase in a matter of weeks and his earning capacity would increase to over $80,000. Appellee is employed by a physician's office,

performing clerical and receptionist tasks at $15 per hour for twenty-five hours a week. Though she stated her current earning capacity was $18,000 per year, Appellee testified that she could begin working full time and earn between $22,000 and $23,000 per year. Appellee went to David Lipscomb for two years and O'More College of Design for two years, but she has worked in various part time occupations for the duration of the parties' marriage, focusing most of her time on raising the parties' three children.

Appellant last resided with Appellee in December 1992. Shortly before the parties separated, they refinanced the marital home, utilizing Appellant's parents as lenders and leaving the parties with an indebtedness of approximately $75,000 at the time of trial. The parties' marital home was appraised at a value of $235,000.

Appellant attempted to file for divorce in 1996 and 1998, but no final divorce decree was entered. Until March 1998, the parties lived apart and informally agreed that Appellant would work and provide financial support for Appellee and their children such as school tuition and car insurance payments. On March 17, 1998, an agreed order of separate maintenance was entered into by the parties which granted Appellee custody of the parties' minor children and Appellant liberal visitation rights, ordered the continuation of the payment of bills the parties customarily paid, prohibited Appellant from making any withdrawals from pension or retirement funds, and ordered that both parties maintain the other as beneficiaries on any life insurance policies. From 1998 to 1999, Appellant had an extramarital affair, which his children discovered, further alienating Appellant from his children.

Appellant filed his complaint for divorce on May 4, 2001, alleging the following grounds: (1) inappropriate marital conduct; (2) irreconcilable differences; and (3) two-year separation of the parties without cohabitation and no minor children. Wife answered and counterclaimed stating that, if a divorce is granted, she is entitled to alimony and her attorney's fees. After a hearing in August 2002, the trial court granted Appellee a divorce, divided the parties' marital property, awarded Appellee alimony *in futuro*, and awarded Appellee her attorney's fees. Appellant moved to alter or amend the final judgment, to correct the final judgment, and to correct the qualified domestic relations order. After correcting the language of the final judgment and the qualified domestic relations order, the trial court denied Appellant's motion to alter or amend the judgment and increased Appellee's award for attorney's fees. Appellant timely filed his appeal to this Court and presents the following issues for our review:

I.      Whether the trial court erred in its division of the marital assets;
II.     Whether the trial court erred in awarding Appellee alimony *in futuro* rather than rehabilitative alimony; and
III.    Whether the trial court erred in awarding Appellee her attorney's fees.

Appellee presents the following additional issue:

IV.    Whether Appellee is entitled to an award for her attorney's fees incurred as a result of this appeal.

For the following reasons, we affirm in part, modify in part, and remand for further proceedings consistent with this opinion.

## Standard of Review

Review of the division of marital property by a trial court is *de novo* upon the record with a presumption of correctness afforded to the trial court's findings of fact. Tenn. R. App. P. 13(d); *Dellinger v. Dellinger*, 958 S.W.2d 778, 780 (Tenn. Ct. App. 1997) (citing *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993)). Trial courts are given wide discretion by appellate courts regarding the manner in which they divide marital assets, and, as a result, such divisions are given great weight by this Court on appeal. *Dellinger*, 958 S.W.2d at 780 (citing *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987)). For awards of alimony, a trial court is given wide discretion "since the amount and duration are determined by the court's findings of fact in consideration of the statutory factors contained in Tenn. Code Ann. § 36-5-101(d)(1)." *Vaughn v. Vaughn*, No. E2000-02281-COA-R3-CV, 2001 Tenn. App. LEXIS 572, at *4 (Tenn. Ct. App. Aug. 7, 2001) (citing *Siegel v. Siegel*, No. 02A01-9708-CH-00198, 1999 Tenn. App. LEXIS 139 (Tenn. Ct. App. Mar. 5, 1999)). Therefore, we must uphold an award of alimony, absent an abuse of discretion by the trial court. *Id.* (citing *Siegel*, 1999 Tenn. App. LEXIS 139 (citing *Hanover v. Hanover*, 775 S.W.2d 612 (Tenn. Ct. App. 1989))). An award of attorney's fees in a divorce action is also within the discretion of the trial court, and this Court will not interfere with such an award unless there is a clear showing of an abuse of that discretion. *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995) (citing *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992); *Crouch v. Crouch*, 385 S.W.2d 288, 293 (Tenn. Ct. App. 1964)). All questions of law are reviewed by this Court *de novo* with no presumption of correctness given to the trial court. *Alford v. Alford*, 120 S.W.3d 810, 812 (Tenn. 2003) (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)).

## Property Division

First, Appellant argues that the trial court erred in the manner in which it divided the marital property and debt of the parties. In this case, there appear to be three major assets in the marital estate. Specifically, the parties have a marital residence appraised at $235,000, Appellant's retirement account valued at $57,860, and Appellant's pension retirement plan with Baptist Hospital valued at $121,431.91.[1] In addition, the parties have a mortgage on the marital residence in the

---

[1]    In addition, the following marital assets were awarded to Appellant: Safeco Annuity ($9,200), First Colony Insurance policy cash value ($9,000), Union Planters checking account ($250), Baptist Hospital credit union account ($50), half of the parties' Union Planters savings account ($1,750), and HCA savings retirement ($830). The following marital assets were awarded to Appellee: Morgan Stanley IRA ($1,337.66), half of the parties' Union Planters savings account ($1,750), and Union Planters checking account ($150).

amount of approximately $75,000.[2] The trial court awarded the entire marital residence to Appellee, awarded Appellee half of Appellant's Baptist Hospital pension plan, and ordered Appellee to pay half of the mortgage. The court then awarded Appellant half of his Baptist Hospital pension plan, all of his retirement account, and ordered him to pay the other half of the mortgage.

To guide Tennessee courts in making an equitable distribution of marital assets upon divorce, Tenn. Code Ann. § 36-4-121(c) (2001) enumerates several factors a court must consider:

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
> (10) The amount of social security benefits available to each spouse; and
> (11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2001). In this case, the parties had been married for approximately twenty-seven years at the time of trial. Appellant and Appellee were 52 and 50 years old respectively. Appellant, though he had lost his pharmaceutical license, was optimistic about regaining that license and had an earning capacity almost four times that of Appellee, who was not working full time or in a professional capacity. Appellant was the primary wage earner for the parties throughout the marriage and Appellee was primarily a homemaker, who raised the three children of the parties. Finally, Appellant had separate property in the form of furniture estimated to be worth $1,965, while Appellee retained her automobile valued at $5,500 and a Noah fund worth $3,377.

---

[2] In addition, the parties had the following debts, all of which the trial court ordered Appellant to pay: lease for Acura ($8,808), debt to T.J. and Ann Evans ($3,000), and credit card debt ($13,000).

Under the circumstances of this case, we feel it is necessary to modify the division of marital property to reach a more equitable result. Equity may be achieved in this case by placing the responsibility of paying the entire mortgage of $75,000 with Appellee rather than dividing the mortgage in half between the parties. We therefore modify the marital property division and place the liability of the mortgage solely with Appellee. We affirm the division as modified and remand this case to the trial court for entry of a judgment consistent with this opinion.

### Alimony *in Futuro*

Appellant next argues that the trial court erred when it awarded Appellee alimony *in futuro* in the amount of $1,500 per month rather than rehabilitative alimony. As noted above, trial courts are given wide discretion by appellate courts in determining the nature and amount of alimony awarded to a party in a divorce. *Vaughn v. Vaughn*, No. E2000-02281-COA-R3-CV, 2001 Tenn. App. LEXIS 572, at *4 (Tenn. Ct. App. Aug. 7, 2001) (citing *Siegel v. Siegel*, No. 02A01-9708-CH-00198, 1999 Tenn. App. LEXIS 139 (Tenn. Ct. App. Mar. 5, 1999)). Tennessee courts are guided by Tenn. Code Ann. § 36-5-101(d)(1) (2001) for determining what type and how much alimony a party should be awarded:

> (d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>
>> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
>> (C) The duration of the marriage;
>> (D) The age and mental condition of each party;
>> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (2001). As the Tennessee Supreme Court has noted, "'the real need of the spouse seeking the support is the single most important factor. In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support.'" *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995) (quoting *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)).

In this case, the testimony was undisputed that Appellant's earning capacity is approximately four times more than Appellee's, Appellee had held only clerical, part-time positions throughout the marriage, the marriage lasted approximately twenty-seven years, Appellee has begun to exhibit signs of osteoporosis, and Appellant has suffered depression as well as experienced high blood pressure. In addition, the trial court found, after considering all relevant factors in Tenn. Code Ann. § 36-5-101(d), that Appellee could not be economically rehabilitated. Under the circumstances of this case, we cannot say that the trial court erred when it awarded alimony *in futuro* rather than rehabilitative alimony. Therefore, we affirm the trial court's award of alimony *in futuro* to Appellee.

### Attorney's Fees at Trial

Appellant next argues that the trial court erred when it awarded Appellee her attorney's fees incurred as a result of the divorce. An award of attorney's fees in a divorce is considered alimony *in solido*. *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000) (citing *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996); *Cranford v. Cranford*, 772 S.W.2d 48, 52 (Tenn. Ct. App. 1989)). As noted above, this Court will not interfere with such an award absent an abuse of discretion by the trial court. *Aaron*, 909 S.W.2d at 411 (citing *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992); *Crouch v. Crouch*, 385 S.W.2d 288, 293 (Tenn. Ct. App. 1964)). Like an award of alimony, the trial court should consider the factors of Tenn. Code Ann. § 36-5-101(d) to

determine if an award of attorney's fees is proper. *Koja*, 42 S.W.3d at 98. It may not be proper to award a spouse alimony *in solido* for payment of attorney's fees when such spouse has adequate property and income for his or her needs. *Id.* (citing *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997); *Duncan v. Duncan*, 686 S.W.2d 568, 573 (Tenn. Ct. App. 1984)). Where the spouse seeking attorney's fees is financially unable to pay such fees and where the other party has the ability to pay, the trial court may properly order an award of attorney's fees. *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992) (citing *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980); *Palmer v. Palmer*, 562 S.W.2d 833, 839 (Tenn. Ct. App. 1977); *Ligon v. Ligon*, 556 S.W.2d 763, 768 (Tenn. Ct. App. 1977)).

In this case, after it considered the factors enumerated in Tenn. Code Ann. § 36-5-101(d), the trial court awarded Appellee an amount of $8,162 to pay for her legal expenses.[3] After our review of the record, we cannot say that the trial court abused its discretion when it ordered Appellant to pay Appellee's attorney's fees. Appellee's main assets are the marital home and half of Appellant's retirement account. After our modification of the marital property division, Appellee is solely responsible for payment of the mortgage on the marital home. In addition, Appellant's earning capacity is far superior to Appellee, because Appellee has traditionally acted as homemaker for the marriage. Therefore, under these circumstances, we must affirm the award of attorney's fees.

### Attorney's Fees on Appeal

Finally, Appellee requests this Court award her the attorney's fees she has incurred as a result of the appeal by Appellant. However, where both parties are partially successful on appeal, it is inappropriate to award a party his or her attorney's fees incurred on appeal. *Baggett v. Baggett*, 512 S.W.2d 292, 294 (Tenn. Ct. App. 1973); *see also Houghland*, 844 S.W.2d at 623. Therefore, we decline to award Appellee her attorney's fees incurred on appeal.

---

[3] In its original order, the trial court awarded Appellee $6,300 for her attorney's fees. After Appellant moved to alter or amend the judgment and the trial court denied such motion, the court increased Appellee's award for attorney's fees to $8,162.

## Conclusion

For the aforementioned reasons, we modify the property division of the trial court, affirm that division as modified, and remand for entry of a judgment consistent with this opinion. In addition, we affirm the award of alimony and attorney's fees. Finally, we deny Appellee's request for her attorney's fees incurred on this appeal. Costs of this appeal are taxed equally to Appellant, Donald W. Evans, and his surety and Appellee, Peggy J. Evans, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE