# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 29, 2006 Session

## JOHN WESLEY CAMPBELL v. SHEILA DARLENE CAMPBELL

**Appeal from the Chancery Court for Coffee County**
**No. 03-158     John Wiley Rollins, Chancellor**

---

**No. M2005-00288-COA-R3-CV - Filed on August 8, 2006**

---

This is an appeal from a divorce action in which the Appellee, Sheila Darlene Campbell (Ms. Campbell), was awarded 73.6 percent of the parties marital property together with alimony *in solido* in the amount of $500.00 per month for a period of five years. The Appellant, John Wesley Campbell (Mr. Campbell) has appealed both the division of the marital assets and awarding of alimony. Ms. Campbell appeals the refusal of the trial court to require that Mr. Campbell pay her attorneys' fees and alleges the trial court erred in equally dividing the court costs. We modify the judgment of the trial court to delete the requirement that Mr. Campbell pay alimony *in solido* and affirm the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right**; **Judgment of the Chancery Court Affirmed, as Modified**

DONALD P. HARRIS, SR. J., delivered the opinion of the court, in which DAVID R. FARMER and HOLLY M. KIRBY, JJ, joined.

Eric J. Burch, Manchester, Tennessee, for the Appellant, John Wesley Campbell

Jeffrey D. Ridner, Tullahoma, Tennessee, for the Appellee, Sheila Darlene Campbell

## OPINION

### I.  FACTUAL BACKGROUND

This is a divorce action between John Wesley Campbell, born June 7, 1957, and Sheila Darlene Campbell, born March 26, 1961. The parties were married on May 19, 1979, and have two children, Jonathan Drew Campbell, born August 23, 1985, and Amanda Leigh Campbell, born August 28, 1983. Drew is now at the University of Tennessee and Amanda is at David Lipscomb University. The parties separated on March 7, 2003.

Mr. Campbell is employed at Arnold Engineering Development Center (AEDC) where he is Chief of Intelligence with a base income of $86,000.00 per year. There is no higher position to

which Mr. Campbell can be promoted at AEDC but he periodically receives step raises of approximately $1,500.00 per year, the next to occur in 2006. He also participates in an employee savings plan where AEDC will match up to five percent of his income that he saves. Previously, he had enlisted in the United States Air Force on August 1, 1975 and retired as a Captain in 1997 with twenty-two years service. Mr. Campbell receives $26,000.00 annually in retirement benefits for his Air Force service and $2460 annually in disability benefits. Ms. Campbell is a realtor in the Tullahoma, Tennessee, area. She became a real estate agent in 2000 and, in the three years prior to 2004, earned an average of $51,000 annually. In 2004, at the time of the trial, she was on track to earn approximately $75,000.00 during that year. She works largely on a commission basis and receives no benefits such as paid vacations, sick leave or retirement benefits. She will be required to purchase her own medical insurance as a result of the divorce.

When the parties were first married, Ms. Campbell had just graduated from high school. She moved to Blytheville, Arkansas, where Mr. Campbell was stationed in the Air Force. She began working as a dental assistant earning little more than the minimum wage. In 1980, Mr. Campbell was transferred to Keesler Air Force Base in Mississippi. Ms. Campbell moved there with him and continued working until shortly before their first child was born. The parties agreed that she should stay at home and focus on raising the children. While stationed at Keesler, Mr. Campbell was able to earn an associate's degree from Jefferson Davis Community College. He was then selected for the Airman's Education and Commission Program which allowed Air Force personnel to attend college on a full-time basis while receiving their regular pay. The parties moved to Starkville, Mississippi, where Mr. Campbell enrolled in Mississippi State University and received a bachelor's degree in aerospace engineering. During that time, the parties second child, Drew, was born.

In 1987, the family moved to Wright-Patterson Air Force Base in Ohio. Ms. Campbell began attending night classes at Sinclair Community College in Dayton, Ohio, where she obtained an associate's degree. Thereafter, she attended Wright State to obtain her bachelor's degree but withdrew when Mr. Campbell was transferred to AEDC and the parties moved to Coffee County, Tennessee. Ms. Campbell attempted to transfer to Middle Tennessee State University but was confronted with losing several credited classroom hours and has not pursued her education further. Mr. Campbell received a master's degree in aviation systems engineering from the University of Tennessee Space Institute in 1994.

In 1998, Mr. Campbell developed a relationship with a young female employee of AEDC. When Ms. Campbell discovered the relationship, he discontinued it for a time but resumed the relationship in late 2001. The parties separated in March 2003. On March 28, 2003, Mr. Campbell filed a complaint for divorce. Ms. Campbell filed an answer and counter-complaint on May 5, 2003. The case was tried on August 31, September 1, and October 8, 2004. The trial court rendered its decision on December 7, 2004, and a Final Order of Divorce was entered January 10, 2005.

In the Final Order of Divorce, Ms. Campbell was granted the divorce on the ground of inappropriate marital conduct. She was awarded property with a value of $373,349.72 according to our calculations. Mr. Campbell was awarded property with a value of $133,922.28. Mrs. Campbell

was also awarded 40.9 % of Mr. Campbell's Air Force retirement benefits which will result in her receiving $886.17 per month.  In addition, Mr. Campbell was ordered to pay alimony in the amount of $500.00 per month for a total of five years.  Each of the parties was ordered to pay their individual attorneys' fees and the court costs were divided equally between the parties.

Both parties have appealed.  Mr. Campbell alleges the property division was inequitable and that the trial court erred in awarding Ms. Campbell alimony.  Ms. Campbell alleges the trial court erred by failing to require Mr. Campbell to pay her attorneys' fees and requiring her to pay one-half of the court costs.

## II. STANDARD OF REVIEW

Our standard of review of a trial court sitting without a jury is de novo upon the record. Tenn. R. App. P. 13(d) (2004); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995) . A presumption of correctness attaches to the trial court's findings of fact, unless the evidence in the record preponderates against them. Tenn. R. App. P. 13(d).  However, we review the trial court's conclusions of law under a pure de novo standard without any presumption of correctness. *Id*.; *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) .

Because the trial judge is in a better position to weigh and evaluate the credibility of the witnesses who testify orally, the weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court.  *In re Conservatorship of Moore*, 2005 Tenn. App. LEXIS 188, at *5, No. W2004-01828-COA-R3-CV, 2005 WL 729185, at *2 (Tenn. Ct. App. 2005) (no perm. app. filed) (citing *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997)) .  Thus, we will not re-evaluate the trial court's assessment of a witness's credibility absent clear and convincing evidence to the contrary. See  *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) .

## III.  ANALYSIS

In the case before us, the trial judge did not make findings with regard to the value of the parties' marital property.  Based upon our view of the best evidence with regard to value, the items of property, their value and the spouse to whom they were awarded may be summarized as follows:

| Property | Value | Awarded husband | Awarded wife |
|---|---|---|---|
| Marital residence | $200,000.00 | | $200,000.00 |
| Husband's residence | $15,000.00 | $15,000.00 | |
| Husband's savings acct. | $14,689.28 | $14,689.28 | |
| Wife's checking acct. | $3,153.70 | | $3,153.70 |
| Wife's savings acct. | $47,678.02 | | $47,678.02 |
| Thrift savings plan | $66,890.00 | $66,890.00 | |
| Roth Acct.-Wife | $15,361.00 | | $15,361.00 |
| Roth Acct.-Husband | $12,498.00 | $12,498.00 | |

| | Value | Husband | Wife |
|---|---|---|---|
| Safeco Acct.-Wife | $1,693.00 | | $1,693.00 |
| Safeco Acct.-Husband | $1,671.00 | $1,671.00 | |
| Wife's IRA Acct. | $23,464.00 | | $23,464.00 |
| 2001 Mazda Miata | $12,674.00 | $12,674.00 | |
| 2002 Ford Ranger | $5,500.00 | $5,500.00 | |
| 2002 Nissan Altima | $15,000.00 | | $15,000.00 |
| Personal Property | $35,000.00 | $5,000.00 | $30,000.00 |
| Transfer to Children | $37,000.00 | | $37,000.00 |
| Total | $507,272.00 | $133,922.28 | $373,349.72 |

This list includes $37,000.00 the trial court found Ms. Campbell had conveyed to accounts held jointly with her children during the pendency of the divorce in violation of the temporary injunction issued pursuant to Tennessee Code Annotated section 36-4-106(d). This sum was awarded to her in the Final Order of Divorce. Based upon our view of the property division, 26.4 percent of the parties marital property was awarded Mr. Campbell and 73.6 percent was awarded Ms. Campbell.

Tennessee Code Annotated section 36-4-121 authorizes courts with divorce jurisdiction, upon request of either party in a divorce action, to equitably divide or distribute the marital property. Tenn. Code Ann. § 36-4- 121(a)(1) (2004). In making an equitable division, the trial court shall consider all relevant factors, including any of those listed in section 36-4-121(c) . *Flannary v. Flannary*, 121 S.W.3d 647, 650-51 (Tenn. 2003) . Section 36-4-121(c) sets forth the following factors:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2004). "A division is not rendered inequitable simply because it is not precisely equal, or because each party did not receive a share of every piece of marital property." *Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001); *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). . Trial courts are granted broad discretion when dividing the marital estate, and such decisions are "entitled to great weight on appeal." *Watters v. Watters*, 959 S.W.2d 585, 590 (Tenn. Ct. App. 1997). Appellate courts will generally defer to a trial court's division of property unless it is inconsistent with the factors enumerated in section 36-4-121(c) or is against the weight of the evidence. *Id.*

While the trial court did not articulate which of the factors set forth in Tennessee Code Annotated, section 36-4-121(c) were important to its division of marital property, we are of the opinion two of them support the trial court's determination. First is the tangible or intangible contribution of Ms. Campbell to the education, training and increased earning power of Mr. Campbell. As stated in the brief filed by the Appellee, she sacrificed her own educational opportunities in order to accompany Mr. Campbell on his various assignments with the Air Force, raise the parties' children and be a homemaker for the family. During several of his assignments he was able to advance his education and now has a master's degree in aviation systems engineering. Virtually all of his college education appears to have been obtained during the marriage of these parties.

The second factor we deem to support the division of property made by the trial court is the economic circumstances of the parties. As argued by counsel for Ms. Campbell, Mr. Campbell has a stable and relatively secure income from his employment with AEDC. He has ample benefits, periodic step raises and an employer-matching savings plan. Ms. Campbell's income is subject to economic conditions and the vagaries of the local real estate market. While she has the potential to earn the greater income of the two, historically she has not and that potential may not only be interrupted by economic conditions but also by illness or disability. She has no medical insurance, retirement or disability benefits provided by her employment and, accordingly, needs a greater economic safety net than Mr. Campbell. Because, in our view, the division of property is consistent with the factors set forth in Tennessee Code Annotated section 36-4-121(c), we affirm the division made by the trial court.

Appellant next challenges the award of alimony made by the trial court. The trial judge, in awarding alimony, stated as follows:

> The most contentious issue in this litigation is the need for alimony. The testimony reflects that after Mrs. Campbell raised her children to a certain age that she started working for Lewis Orr Realty then First Choice and now Joe Orr. The records reflects (sic) that in 2003, which she testified, was a very bleak year, she made over fifty thousand dollars ($50,000.00) and appears to be on a track this year to make some where in the range of seventy five thousand to eighty thousand dollars ($75,000.00). Mrs. Campbell testified extensively that while her husbands present annual income is approximately one hundred fourteen thousand dollars ($114,000.00), that her income was subject to the whims of the real estate market with all its uncertainties and that he had a guaranteed income no matter the whims of the business world. If one looks at the long view it appears the reality is that while Mr. Campbell's income is fixed with the exception of raises and cost-of-living increases. In fact it is Mrs. Campbell who has the potential to earn the greater income of the two.
>
> The undersigned notes that under cross-examination Mrs. Campbell stated "I don't need the money, I just want it." The court is mindful of the conduct of Mr. Campbell and readily sees where it would deeply hurt and embitter Mrs. Campbell. Legally, that is not a justification under the laws of the state of Tennessee for awarding alimony. Taken as a whole the court views Mrs. Campbell's statement as an intemperate remark. . . . Mrs. Campbell testified that she was extremely satisfied with her current income and unlikely to seek further education or other opportunities as long as her business continued to prosper. From all of which the court finds that neither transitional alimony or rehabilitative alimony is appropriate in this case. Out of an abundance of caution and to insure Mrs. Campbell's immediate economic future the undersigned awards her the sum of five hundred dollars ($500.00) per month for a period of five (5) years and after the entry of the final decree.

In order to consider the appropriateness of the alimony award, we first must consider the nature of the alimony awarded. The types of alimony a court with divorce jurisdiction may award are rehabilitative alimony, alimony in futuro, also known as periodic alimony, transitional alimony, and alimony *in solido*. Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 2005). Rehabilitative alimony provides the economically disadvantaged spouse support for a period of time to enable that spouse to become and remain self-sufficient. Rehabilitative alimony is appropriate where the trial court finds that the economically disadvantaged spouse can be rehabilitated from an economic standpoint. *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000). Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce. Tenn. Code Ann. §36-5-121(d)(4). Where such rehabilitation is not feasible and transitional alimony is insufficient because long-term support is necessary, and the court may award alimony *in futuro*. *Id*. "Alimony *in futuro* should be

awarded only when the trial court finds that 'economic rehabilitation is not feasible and long-term support is necessary.' " *Id.* at 359.

In contrast to the other types of alimony, this court has not considered alimony *in solido* as support and maintenance for an economically disadvantaged spouse but, rather, a form of division of marital property. See, *Schmidt v. Schmidt*, 2005 Tenn App LEXIS 586, No. M2004-01350-COA-R3-CV, 2005 WL 2240960, at *3 (Tenn. Ct. App. Sept. 15, 2005); *Knowles v. Knowles*, 2002 Tenn. App. LEXIS 272, No. M2001-01282-COA-R3-CV, 2002 WL 598551, at *4, *6 (Tenn. Ct. App. Apr. 19, 2002). Alimony *in solido* may be awarded in a lump sum at the time of the final decree, or it may be awarded in the form of periodic payments for a given period of time. In either form, the award is of a definite amount. *Waddey v. Waddey*, 6 S.W.3d 230, 232 (Tenn. 1999). Since alimony *in solido* is a form of property division, it is non-modifiable and the trial court's jurisdiction over the award ends once the award becomes final. *Bryan v. Leach*, 85 S.W.3d 136, 145-46 (Tenn. Ct. App. 2001).

In the case before us, the trial court specifically found rehabilitative and transitional alimony to be inappropriate. Whether alimony is *in futuro* or *in solido* is determined by either the definiteness or indefiniteness of the sum of alimony ordered to be paid at the time of the award. *McKee v. McKee,* 655 S.W.2d 164, 165 (Tenn. App. 1983). Alimony *in solido* is an award of a definite sum of alimony. *Spalding v. Spalding,* 597 S.W.2d 739, 741 (Tenn. App. 1980). Alimony *in solido* may be paid in installments provided the payments are ordered over a definite period of time and the sum of the alimony to be paid is ascertainable when awarded. *Id.* Alimony *in futuro,* however, lacks sum-certainty due to contingencies affecting the total amount of alimony to be paid. *McKee,* 655 S.W.2d at 165-66 (holding alimony was *in futuro* where husband was ordered to pay the mortgage note until either the son turned twenty-two or the house was sold). Viewed by these standards, the alimony awarded by the trial court was clearly alimony *in solido*, being for an amount that may be readily ascertained and with no contingencies that would terminate or alter the payments.

Because this court considers alimony *in solido* in the nature of a property division, in evaluating the propriety of such an award the amount of such alimony has been added to the property awarded the recipient and deducted from the property awarded to the payer. *Knowles v. Knowles*, 2002 Tenn. App. LEXIS 272, No. M2001-01282-COA-R3-CV, 2002 WL 598551, at *6 (Tenn. Ct. App. Apr. 19, 2002). The amount of alimony *in solido* awarded in this case is $500.00 per month for five years (sixty months) or $30,000.00. Adding $30,000.00 to the property awarded Ms. Campbell would result in her receiving $403,349.72 or approximately 79.5 percent of the marital estate. Deducting a similar amount from the property awarded Mr. Campbell would result in his receiving $103, 922.28 or approximately 20.5 percent of the marital estate. Considering the record as a whole, we find this to be an inequitable division of martial property, and, accordingly, the final order should be modified by deleting the award of alimony *in solido* of $500.00 per month for five years.

The Appellee, Ms. Campbell assigns as error the trial court's refusal to order Mr. Campbell to pay her attorneys' fees incurred in prosecuting her divorce action. The record indicates the

attorneys' fees of Ms. Campbell were $20,860.33. In denying her request for attorneys' fees, the trial court stated:

> Finally, Mrs. Campbell seeks attorneys fees. For the better part of two days of a three day trial there was testimony from Mrs. Campbell and her witnesses about Mr. Campbell's misconduct for which the record reflects he admitted inappropriate marital conduct from the filing of the complaint. Each party shall be responsible for their own attorney fees.

The award of attorney fees by the trial court is considered an award of alimony. *Wallace v. Wallace*, 733 S.W.2d 102, 110 (Tenn. Ct. App. 1987). Decisions involving attorney's fees are within the sound discretion of the trial court and, on appeal, this court will not interfere with that decision except where there is a clear showing that the trial court reached the wrong conclusion such that manifest injustice would be done if the award or failure to make an award is allowed to stand. *Hanover v. Hanover*, 775 S.W.2d 612, 618 (Tenn. Ct. App. 1989). The trial court was apparently of the opinion that Ms. Campbell had considerably lengthened the trial and attorney's fees incurred in order to prove the inappropriate relationship that Mr. Campbell had admitted. We note that after paying her attorneys' fees, Ms. Campbell will retain approximately 69.6 percent of the total marital estate of the parties. Accordingly, we cannot say that the trial court abused its discretion in ordering the parties to bear their own legal expenses or that denial of an award to Ms. Campbell would result in a manifest injustice to her. Ms. Campbell's request for her attorneys' fees incurred in the trial court is respectfully denied. Accordingly, we affirm the trial court on this issue.

Finally, Ms. Campbell alleges the trial court erred by equally dividing the court costs incurred in the trial court. The trial court is afforded discretion in taxing and assessing costs. *Long v. Long*, 957 S.W.2d 825, 833-34 (Tenn. Ct. App. 1997); *Ray v. Ray*, 2004 Tenn App LEXIS 324, No. M2003-01158-COA-R3-CV, 2004 WL 1114578, at *17 (Tenn. Ct. App. May 18, 2004). While court costs are ordinarily allowed to the prevailing party, Rule 54.04, Tenn. R. Civ. P., the Appellee has failed to cite anything in the record, other than she was awarded the divorce, that would lead us to the conclusion that the trial court abused its discretion in equally dividing the court costs between the parties. As a result, we must affirm the trial court on this issue.

## IV. CONCLUSION

The ruling of the trial court is affirmed as modified to delete the obligation of Mr. Campbell to pay alimony *in solido*. We note that a motion by Mr. Campbell to suspend the alimony payments pending appeal was denied. This matter is remanded to the trial court for a determination of how payments of alimony heretofore made by Mr. Campbell shall be recouped and for enforcement of the judgment of the court. The court costs on this appeal shall be divided equally between the parties.

_____
DONALD P. HARRIS, SENIOR JUDGE