IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 5, 2012 Session

## WILMA J. SOLOCK SMARSH, v. DAVID A. SMARSH

**Appeal from the Chancery Court for Morgan County**
**No. 09-22   Hon. Frank V. Williams, III., Chancellor**

**No. E2011-01767-COA-R3-CV-FILED-APRIL 23, 2012**

This is a divorce case of a marriage of approximately 34 years. After hearing the evidence, the Trial Judge awarded the divorce to the wife, "equally" divided the parties' marital property, ordered the husband to pay the wife permanent alimony of $500.00 a month, and awarded the wife $10,000.00 in partial payment of her attorney's fees. The husband appealed and contended inter alia that the wife was not entitled to permanent alimony, nor was she entitled to have an award of attorney's fees against him. We affirm the Judgment of the Trial Court.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Stanley F. LaDuke, Knoxville,  Tennessee, for the appellant, David A. Smarsh.

Browder G. Williams, Kingston, Tennessee, for the appellee, Wilma J. Solock Smarsh.

### OPINION

Wilma Jean Solock Smarsh ("wife"), filed a Complaint for Divorce in the Chancery Court, on March 2, 2009, against David Anthony Smarsh ("husband").  The Complaint alleged that the husband was guilty of inappropriate marital conduct or that irreconcilable

differences had arisen. The wife alleged that the parties had assets that needed to be equitably divided, and that she was economically disadvantaged when compared to the husband, and asked for alimony. The husband answered, denied that he was guilty of inappropriate marital conduct, but conceded the parties had irreconcilable differences, and denied the wife was in need of alimony.

The wife then filed a Motion seeking an award of alimony and attorney's fees pendente lite. The parties then entered into an Agreed Order on March 9, 2010, which provided that, pending a final hearing, the husband would pay the wife one-half of his monthly retirement benefit, or $2,808.54 per month. Also, the husband would pay the wife one-half of the net rental received each month from the parties' condominium in North Carolina.

Subsequently, the parties engaged in mediation, but no issues were resolved.

Next, the husband filed a Counter-Claim for divorce charging the wife's inappropriate marital conduct. The parties then entered an Agreed Order allowing the husband to amend his Answer, but the wife then filed a Motion for Contempt, asserting the husband had violated the mandatory mutual injunction by selling securities owned by the parties valued at $480,500. Also, he had transferred cash and securities of the parties from their joint account to accounts held only in the husband's name, and had dissipated assets by gambling.

The case came on for trial on May 18 and 20, 2011. Both the husband and wife offered extensive evidence on the issues before the Court.

At the conclusion of the evidence, the Court stated the parties' assets would be divided equally, and the wife was due some amount of permanent alimony, mostly because of the disparity in the education and experience the husband had gained during the marriage. The Court said it was a "close call", but the divorce should be granted to the wife. The Court stated that the wife was a military wife, took part in the military activities, raised the parties' child, etc. The Court noted the wife did not want the husband in the military and probably made him "painfully aware of her displeasure periodically." The Court found the husband, however, was obviously tired of the marriage, tired of his wife, and had been "looking for a while." The Court stated that the husband felt "like the grass is greener on the other side of the fence."

The Court found the wife was due payment of some of her attorney's fees, and the Court then observed, "this is one of the most clear-cut cases I believe in twenty-seven years that I've ever had where there needs to be some money flowing to the wife simply to make up the difference in the intangible benefit that he's derived as a result". The Court then

awarded the wife $10,000 toward her attorney's fees.

In the Court's Final Decree, the Court found the husband was in technical violation of the mutual injunction against disposing of assets, but assessed no penalty against him. The Court ordered the parties to prepare a joint tax return for 2010, and to split any liability/refund equally. The Court awarded the husband the rental condominium in North Carolina and the timeshare in Atlantic City, and valued the same at $55,000 and $5,000, respectively. The Court awarded the husband the 2005 Jeep valued at $13,325, and 2003 Harley valued at $7,280. The Court awarded the wife the 2004 Jeep valued at $9,265, and divided the parties' personalty. The Court ordered the parties to split the cash in their bank accounts (valued at $227,175.92), and ordered the husband to pay the wife $30,000 to equalize the division of real property, $5,645 to equalize the division of vehicles, $112.50 to equalize the division of personalty, and $10,000 for attorney's fees. The Court then ordered the husband to pay the wife $500 per month in permanent alimony, and ordered the husband's military retirement pay to be split.

The husband filed a Notice of Appeal, and raised these issues:

1. Whether the Trial Court abused its discretion or erred in finding that the husband was at fault in the marriage and in awarding a divorce to the wife?

2. Whether the Trial Court's award of permanent alimony to the wife was an abuse of discretion, and whether the resulting designation of the wife as beneficiary of the husband's life insurance and the mutual requirement to provide IRS form 4506 are appropriate?

3. Whether the Trial Court erred by basing its award of alimony on speculation of the husband's future ability to be successful and earn additional income and on the wife' perceived need?

4. Whether the amount of alimony was excessive?

5. Whether the Trial Court abused its discretion or erred in awarding attorney's fees to the wife?

6. Whether the Trial Court erred in finding that the husband was in technical violation of the temporary mutual injunction?

The husband argues that the Court erred in awarding the wife the divorce. We review the trial court's findings of fact *de novo* with a presumption of correctness, unless the

evidence preponderates otherwise. Tenn. R. App. P. 13(d).

With regard to fault, the Trial Court stated:

They don't have any debts. They're wealthy compared to so many people in the United States today. It looks like she could have been a little optimistic given the way things were going for her, but I don't – the way I heard the testimony, I didn't see that necessarily as something she expressed to him, but maybe.

On the other hand, if we forget about the adultery, which she condoned, he's, obviously, been looking for a while; tired of his wife, tired of marriage, tired, I guess, maybe of arguing, fighting. He's out of the military now. He's got a good education. He's a man with money. And I think he feels like the grass is greener on the other side of the fence. That's pretty much the way I see Mr. Smarsh.

So I'm awarding the divorce to the wife.

The evidence does not preponderate against the Trial Court's award of the divorce to the wife based on the husband's fault. The wife testified that, while she was not always thrilled with the husband's decision to be in the military (or more appropriately, his refusal to consider her opinion on the matter), she still tried to be supportive and fulfilled her role as an officer's wife, joining and leading in many clubs and organizations in support of the same, being a homemaker while the husband was working and traveling for his work, raising their child, and also working outside the home when she could. She testified that the husband chose to stay in the military despite her concerns about their daughter having to move so much, and despite her concerns about his safety and his being gone from home, but would not waiver from this path despite her feelings. The wife admitted that she once asked the husband to choose between her and the military, and he chose the military.

The wife testified at great length about the husband's involvement with other women, not only the woman he admitted to having an affair with (which she later forgave and the Trial Court did not consider), but also the fact that she caught him kissing and hugging a woman named Heather on the street mere months before they separated. She testified she later found out he had brought Heather into their home, and that she found evidence of other women being there, such as a lipstick that was not hers and a condom. She testified that the husband communicated with various women online, and presented a list of those women. She also presented pictures taken of the husband hugging various women at a car show. She also presented a copy of the husband's Match.com profile, which stated that he was "seeking women" age 28-40. Finally, she testified that the husband was her only sexual partner, and he had given her sexually-transmitted diseases during their marriage.

-4-

The husband's basic complaint against the wife was that she was not totally supportive of his military career, but he admitted that she took part in various activities and clubs for officers' wives and "did her part". He also admitted that she "did her part" as a homemaker and mother. Again, we conclude the evidence does not preponderate against the Trial Court's award of a divorce to the wife.

Next, the husband argues that the Trial Court erred in making an award of permanent alimony to the wife, and also erred in the amount set. He argues that the Trial Court impermissibly considered speculation about the husband's future earning potential, and did not properly consider the wife's need and the husband's current ability to pay, nor the other statutory factors. He argues that the Trial Court also did not consider whether the wife could be rehabilitated.

As the Supreme Court recently explained in *Gonsewski v. Gonsewski*, 350 S.W.3d 99 (Tenn. 2011):

> For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. *See Robinson v. Robinson*, 26 Tenn. (7 Hum.) 440, 443 (1846) ("Upon a divorce ... the wife is entitled to a fair portion of her the husband's estate for her support, and the amount thus to be appropriated is a matter within the legal discretion of the chancellor...."). This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award. *See, e.g.*, *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).

> Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2 006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical

result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but " 'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.' " *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Id*. at 105-106.

As to the alimony award, the Trial Court stated that the wife was due some amount of permanent alimony, mostly because of the disparity in the education and experience the husband had gained during the marriage. The Court further discussed the parties' situation and found that the wife was a housewife and mother while the husband went out and advanced his education and experience.

In determining whether to award spousal support and, if so, the nature and amount of same, courts are to consider several factors:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36–4–121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn.Code Ann. § 36–5–121(i). Although each of these factors must be considered when relevant to the parties' circumstances, "the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." *Gonsewski*, at 110.

While the Trial Court did not expressly discuss each of the foregoing factors, a review of his analysis and consideration of the facts of this case demonstrate the Trial Court did not abuse its discretion in awarding the wife alimony. The husband has five advanced degrees and thirty years' experience in the military, and obviously has a much greater earning capacity than the wife, as the Trial Court found. The wife only had a high school education and had worked very little during the marriage (and not at all since the mid-1990's). She has no marketable skills to speak of, and starting a career in her fifties, she would be hard-pressed to find a job making more than minimum wage. The husband, on the other hand, has an impressive bio demonstrating his marketability, and despite his supposed unsuccessful efforts at finding a job, admitted that he expected to find one earning in excess of $100,000 per year. He also demonstrated great success at stock trading, boasting that in the year and a half the parties were separated, he had almost doubled the value of their stock accounts, earning approximately $300,000. All of this demonstrates the husband's earning capacity.

The parties were of similar age and were married for almost 34 years, and both were

in relatively good health, although the wife testified that she struggled with depression and had been treated for this over the years, and also that she was a breast cancer survivor with lingering back problems.

Neither party had significant separate assets, and the marital assets, which were considerable, were equally split. The wife had contributed to the husband's educational level and earning ability by being a homemaker and mother, and had allowed the husband to travel and move about with his career, such that the parties achieved a relatively high standard of living together.

Considering these factors, it is clear that the Trial Court did not abuse its discretion in the alimony award. The husband argues, however, that the Court did not find that the wife had a need or that the husband had the current ability to pay. The wife testified, however, that she was living at a much lower standard of living than the husband enjoyed or than the parties enjoyed while together, and that she had "cut her bills to what she could afford". The record demonstrates that if the wife tried to maintain the living standard which she enjoyed with the husband, or which the husband enjoyed on his own, she certainly established a need on that basis. She should not be penalized because she tried to cut her expenses and live within a budget. The husband demonstrated not a speculative, but a real ability to earn income and pay alimony to the wife. It is also undisputed that the husband was given the parties' rental condo in North Carolina and their timeshare in Atlantic City, along with the rental income derived from these properties (which is in excess of the monthly alimony amount awarded to the wife).

The husband next attacks the award of alimony on the ground that the wife did not demonstrate she could not be rehabilitated. He points out that our legislature has expressed a preference for short-term support where rehabilitation is possible. However, long-term support can be awarded if "the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." Tenn. Code Ann. § 36–5–121(f)(1). Rehabilitation has been said to be not feasible where "the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse." Tenn.Code Ann. § 36–5–121(f)(1).

The husband charges that his attorney argued that the wife was not economically disadvantaged and could be rehabilitated, but the Court rejected that contention outright. The Court stated that the wife had only a high school diploma, while the husband held many advanced degrees, all of which were earned during the marriage, and which the Court found to be "marketable". As the Court found there was a huge disparity in the parties' education

and earning capacity and thus the wife was disadvantaged. There was no proof presented that the wife could be rehabilitated at her age, with her limited education, skill level, and work experience, and we agree with the Trial Court that rehabilitation was not feasible.

Finally, the amount of alimony awarded was not excessive. The wife was awarded alimony of $500 per month, which was less than what the husband derived from rental property awarded to him, and his earning capacity which was substantially greater was established by the evidence. Where one spouse suffers economic detriment for the benefit of the marriage, the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse. Tenn. Code Ann. §36-5-121(c). We conclude that the award of alimony was not excessive, and affirm the Trial Court on this issue.

Finally, the husband argues the Trial Court erred in awarding the wife attorney's fees of $10,000 as additional alimony.

As our Supreme Court has discussed:

It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36–5–121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99 (Tenn. 2011)(citations omitted).

Our Court has also stated that an "award of attorney's fees is left largely to the discretion of the trial court, and this Court will not interfere with the trial court's decision except where there is a clear showing that the trial court reached the wrong conclusion with the result that manifest injustice will be done if the decision is allowed to stand." *Hanover v. Hanover*, 775 S.W.2d 612 (Tenn. Ct. App. 1989). While the record does establish the wife received adequate marital property to pay her attorney, we are of the opinion the statutory

factors still support an award of attorney's fees as alimony in this case. In this connection the Trial Court stated that this case should have been simple except for the dispute over whether alimony should be paid. We have has previously held that where one spouse causes the litigation to be drawn out or acts in such a way as to increase the other spouse's legal obligations, this can also support an award of fees. *See Long v. Long*, 957 S.W.2d 825 (Tenn. Ct. App. 1997). In this case, the allegations were that the husband failed to provide discovery in a timely fashion regarding the parties' assets, and the husband's obvious desire to avoid paying alimony necessitated the trial. We affirm the award of alimony awarded to the wife.

In conclusion, the husband argues that he should not have been held in technical violation of the temporary mutual injunction against disposing of assets (even though no penalty was imposed). There is no dispute that the husband sold and traded numerous stocks out of the parties' accounts while the injunction was in place, without consulting the wife. He also spent $12,500 investing in a speculative, start-up aloe vera company, and spent in excess of $7,000 at casinos. Also not in dispute, was the fact the husband moved various stocks/funds from accounts in both parties' names to accounts in his sole name. We conclude the Trial Court did not err in finding a technical violation of the injunction.

The Judgment of the Trial Court is affirmed and the cost of the appeal assessed to the husband, David A. Smarsh.

_____
HERSCHEL PICKENS FRANKS, P.J.

-10-