# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 6, 2013 Session

## STACY RAMSEY v. PHILLIP RAMSEY

**Appeal from the General Sessions Court for Blount County**
**No. S-15489      Robert L. Headrick, Judge**

---

**No. E2012-01940-COA-R3-CV-FILED-OCTOBER 29, 2013**

---

In this divorce action, Stacy Ramsey ("Wife") and Phillip Ramsey ("Husband") stipulated grounds for divorce but proceeded to trial regarding several issues, including classification and division of the parties' assets, as well as child support, spousal support, and attorney's fees. Following a bench trial, the trial court valued the parties' marital assets and divided the marital estate equally. The court awarded Husband both homes owned by the parties upon his payment to Wife of one-half the combined equity. The court found no basis to modify the parties' mediated co-parenting agreement and set child support accordingly. The court also found that Wife was not entitled to alimony and awarded Husband $450 in attorney's fees due to Wife's failure to appear at a previous hearing. Wife appeals. We modify the trial court's property division to correct mathematical errors, and we reverse the trial court's calculation of child support. The trial court's judgment is affirmed in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

Sarah C. Easter, Knoxville, Tennessee, for the appellant, Stacy Ramsey.

Cathy Morton, Maryville, Tennessee, for the appellee, Phillip Ramsey.

## OPINION

### I. Factual and Procedural Background

The parties were married in 1993. Husband's two children from a previous

relationship lived with the parties while minors. Those children have now attained adulthood. Wife's daughter Kayla, from a prior relationship, was adopted by Husband after the parties' marriage. The parties also have a son together, Tyler, who was born in 1994. The parties separated in September 2008 when Wife left the marital residence. Taking Kayla and Tyler with her, Wife moved into a home owned by her parents. Husband later petitioned the court and was granted temporary custody of Tyler.

Both parties admit that their marriage was tumultuous and that they previously separated in 1999 for approximately one year. Following Wife's filing for divorce, the parties reconciled. Wife has struggled with depression and anxiety, testifying that she was recently diagnosed with Bipolar disorder. Wife attempted suicide in May 2008. According to Wife, she is currently unable to maintain regular employment but is attempting to regain her ability to work through medication and counseling.

The parties participated in mediation and entered into an agreement with regard to matters of co-parenting. Wife was designated primary residential parent of Kayla, with Husband to exercise co-parenting time at Kayla's sole discretion. Husband was designated primary residential parent of Tyler, with Wife having co-parenting time every Tuesday and alternating weekends. The parties acknowledged that Wife could enjoy additional co-parenting time with Tyler if the parties agreed and at Tyler's discretion.

The trial was held in February and March 2010 over the course of three non-consecutive days. The trial court entered an Order and Decree of Divorce on April 8, 2010, based on the parties' stipulation as to grounds. The remaining issues were reserved for a future hearing. At the conclusion of trial, the court asked the parties to file "closing argument briefs" regarding the remaining issues. The court entered a Final Judgment on August 9, 2012. Wife timely appealed.

## II. Issues Presented

Wife presents the following issues for review, which we have restated slightly:

1.      Whether the trial court erred in its valuation of the Foxtrace property.

2.      Whether the trial court erred in its valuation of the Rockford Walker Court property.

3.      Whether the trial court erred in its valuation of the 2004 Polaris ATV.

4.      Whether the trial court erred in finding that the certificates of deposit

were owned by Husband's parents.

5.     Whether the trial court erred in deducting a portion of Wife's automobile accident settlement proceeds from her one-half share of the marital estate.

6.     Whether the trial court equitably divided the parties' marital property.

7.     Whether the trial court erred in its calculation of child support from the date of the divorce filing on September 30, 2008, through April 2010.

8.     Whether the trial court erred in concluding that Wife is not entitled to alimony *in futuro*.

9.     Whether the trial court erred in failing to award Wife her attorney's fees.

## III. Standard of Review

In a case involving the proper classification and distribution of assets incident to a divorce, our Supreme Court has elucidated the applicable standard of review as follows:

This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). Questions relating to the classification of assets as marital or separate are questions of fact. *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005).

Further, as this Court has previously held:

> Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. Separate property is not subject to division. In contrast, Tenn. Code Ann. §36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and §36-4-121(a)(1) only requires an equitable division.

*McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140 at *3-4 (Tenn. Ct. App. Apr. 16, 2010) (internal citations omitted). *See also Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

Determinations regarding spousal and child support are reviewed under an abuse of discretion standard. *See Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1987); *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). "This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

## IV. Sufficiency of Factual Findings

Wife argues throughout her brief on appeal that the trial court erred by failing to explicate sufficient factual findings to support its judgment. A review of the trial court's Final Judgment, however, demonstrates that the trial court did make specific factual findings in support of its ruling, both by stating express findings and by adopting and incorporating the classification and valuation of the parties' marital property contained in Husband's closing argument brief. Incorporation of party-prepared findings is a permissible practice, especially where the trial court invites both parties to prepare competing documents and "carefully examine[s] them to establish that they accurately reflect [the court's] views and conclusions, and not those of counsel." *Delevan-Delta Corp. v. Roberts*, 611 S.W.2d 51, 53

(Tenn. 1981). The court also specifically listed and valued each marital asset in the Final Judgment in a footnote, thereafter dividing the property equally. The trial court likewise explained the basis for its determinations regarding alimony, child support, and attorney's fees. Wife's contention that there were insufficient factual findings is without merit.

## V. Valuation of Foxtrace Property

The parties own two homes that either were purchased or built during the marriage. The first home is located on Foxtrace Drive in Rockford and was purchased by the parties in 1993 ("Foxtrace Property"). Wife hired an expert who appraised this home at $168,000. Husband testified that he considered the expert's appraisal too high because the appraiser did not take into account the significant repairs needed on the home. Husband thus valued the home within the range of $135,000 to $140,000.

As this Court has previously explained:

> The value of marital property is a fact question. Thus, a trial court's decision with regard to the value of a marital asset will be given great weight on appeal. In accordance with Tenn. R. App. P. 13(d), the trial court's decisions with regard to the valuation and distribution of marital property will be presumed to be correct unless the evidence preponderates otherwise.

> The value of a marital asset is determined by considering all relevant evidence regarding value. The burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present. Thus the trial court, in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted.

*Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987) (internal citations omitted).

In this case, the range of evidence regarding the Foxtrace Property was $135,000 to $168,000. The trial court valued the property at $140,000. We determine that the evidence does not preponderate against the trial court's valuation, as it was within the range of evidence submitted.

Wife argues that the trial court should not have given greater weight to Husband's lay opinion regarding value than it assigned to the opinion of her expert appraiser. Wife concedes, however, that Husband, as owner, is qualified to provide an opinion regarding the value of the property so long as that opinion is not based on "pure speculation." *See Sikora v. Vanderploeg*, 212 S.W.3d 277, 284 n.5 (Tenn. Ct. App. 2006). In the case at bar, Husband

-5-

testified regarding the value of the real property and stated that he believed it would be lower than the value found by the appraiser, taking into consideration the tax appraisal and the extensive repairs needed on the house. Inasmuch as Husband's opinion was not based on "pure speculation," the trial court did not err in considering Husband's opinion with regard to establishing property value.

## VI. Valuation of Rockford Walker Court Property

Wife also contends that the trial court erred in its valuation of the parties' home located on Rockford Walker Court. Wife's expert valued this home at $101,048 while Husband's expert valued the home at $69,000. Husband testified that the parties spent approximately $40,000 constructing the house and that he had performed much of the work himself. The trial court valued the home at $69,000. Again, we find that the evidence does not preponderate against the trial court's valuation, as it was established within the range of evidence submitted.

Wife submits that the trial court erred in adopting the opinion of Husband's appraiser for two reasons: the appraisal was completed nine months before the trial, and the appraisal report's cover displayed an inaccurate photograph. We find these arguments to be unavailing. The appraisal was not so outdated as to render it inadequate. *See Watters v. Watters*, 959 S.W.2d 585, 588 (Tenn. Ct. App. 1997) (this Court implicitly rejected the idea that an appraisal conducted nearest in time to the final hearing date is the best evidence of value). Furthermore, the inclusion of one incorrect photograph (when the proper photograph was shown on the following page) would not render the appraisal insufficient in any way. The parties stipulated to the qualifications of both experts, and the experts established the range of property value evidence for this marital asset. The trial court appropriately established a valuation within that range of evidence, and the evidence does not preponderate against the court's determination.

## VII. Valuation of Polaris ATV

Wife argues that the trial court erred in valuing the 2004 Polaris ATV at $100. The vehicle had been purchased new in 2003 for $1,749. Husband testified at trial, however, that the ATV was currently "trashed" and that the parties' son had removed and lost some of the parts. Husband indicated that he sold it for $100 to get "junk out of the garage." Although Wife contends that the ATV should have been valued at $1,500, she presented no testimony at trial disputing Husband's characterization regarding the condition of the ATV. Wife relies on this Court's opinion in *Mathias v. Mathias*, No. E2006-02294-COA-R3-CV, 2008 WL 539227 at *5-6 (Tenn. Ct. App. Feb. 28, 2008), to support her contention that the trial court should have adopted her value because Husband sold the ATV during the pendency of the

divorce without Wife's consent. In *Mathias*, however, the husband omitted the disputed items from his list of marital assets and provided no testimony regarding their value. *Id.* In the case at bar, Husband has never disputed that the ATV was marital property. He further provided testimony regarding its condition and value, which the trial court clearly credited.

The trial court's decision with regard to the value of a marital asset is "given great weight on appeal." *Wallace*, 733 S.W.2d at 107. Because the trial court's valuation was within the range of evidence submitted and the evidence does not preponderate against such determination, we discern no error in the court's valuation of this asset.

VIII. Ownership of Certificates of Deposit

Wife contends that the trial court erred in its finding that the certificates of deposit ("CDs"), titled in the names of Husband and his mother, did not belong to the parties but rather were owned by Husband's mother. The proof showed that these CDs were originally titled to both Husband and his parents, and following his father's death, to Husband and his mother. Husband testified that the money invested in the CDs belonged to his parents and that the CDs did not contain any funds belonging to the parties. Husband further explained that when the CDs were liquidated, a portion of the money was used by his mother to pre-pay her funeral expenses, with his mother keeping the remainder of the funds. Husband's mother corroborated Husband's testimony regarding the CDs in all respects.

Wife argues that these transactions are "suspicious" because the earliest documentation regarding the CDs evinced that the first certificate of deposit was opened in 2001 in Husband's name and his father's name, "following two of the parties' separations and reconciliations and while his father was still presumably capable of managing his own financial affairs." Wife also asserts that the circumstances surrounding the cashing of the most recent CD were equally suspicious because the transaction occurred during the pendency of the divorce, with Husband depositing part of the money into his checking account before writing the check to pay funeral expenses. We disagree. Husband explained that his name was placed on the CDs initially because his father wanted him to assist with the parents' financial affairs. At the time, his father's health was declining and his mother had never learned to write checks or pay bills. Similarly, the check payable to the funeral home in 2009 was written on behalf of Husband's mother because of her inability to write checks. Husband's mother substantiated this testimony. As such, we can find no error in the trial court's determination that these CDs were owned by Husband's parents and were not marital assets. We find this issue to be without merit.

IX. Equitable Distribution of Marital Property

A. Automobile Accident Proceeds

The parties agree that an automobile accident settlement of $8,341, paid in August 2009, was marital property and that the trial court properly classified it as such. The parties also stipulate that these funds were provided to Wife for her use during the pendency of the divorce. Wife contends that the trial court erred, however, by deducting the full amount of the settlement proceeds from her half of the marital estate. Wife argues that the trial court treated this money as funds she had dissipated.

We disagree with Wife's contention that the trial court treated these funds as dissipated, as no such finding or discussion appears in the Final Judgment. We agree with Wife, however, that the trial court improperly "charged" her with the entire amount of the settlement proceeds that she had utilized during the pendency of the divorce.

In the trial court's Final Judgment, the court considered the entire settlement amount of $8,341 as marital property, including it in the total marital estate, valued at $116,951. The court divided the aggregate marital estate equally, finding that each party was entitled to $58,476. The court stated, however, that because Wife had already received the entire amount of the settlement proceeds of $8,341, such amount would be deducted from her share of $58,476. We determine that the trial court committed a mathematical error in subtracting the full settlement amount when the court's intent was clearly to divide the assets equally between the parties. By deducting the entire amount of the settlement proceeds from Wife's share of the estate, the trial court erroneously deprived Wife of her equal portion of this asset. We therefore modify the trial court's judgment to credit back one-half of this asset, specifically $4,170.50, to Wife's share of the overall distribution.

B. Overall Distribution of Marital Estate

Wife contends that the trial court's overall marital estate distribution, which was mathematically equal, was inequitable in light of the statutory factors contained in Tennessee Code Annotated § 36-4-121(c). Wife asserts that the disparity in the parties' incomes and earning potential should yield a result that awards her a greater share of the marital estate. We disagree.

As stated above, "[t]his Court gives great weight to the decisions of the trial court in dividing marital assets and 'we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" *Keyt*, 244 S.W.3d at 327 (quoting *Herrera v.*

*Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)). This Court has also previously elucidated:

> The approach to dividing a marital estate should not be mechanical, but rather should entail carefully weighing the relevant factors in Tenn. Code Ann. § 36-4-121(c) in light of the evidence that the parties have presented. Trial courts have broad discretion in fashioning an equitable division of marital property, and appellate courts must accord great weight to a trial court's division of marital property. Accordingly, it is not our role to tweak the manner in which a trial court has divided the marital property. Rather, our role is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent with logic and reason, and whether the trial court's division of the marital property is equitable.

*Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007) (internal citations omitted).

Tennessee Code Annotated § 36-4-121(c) (Supp. 2013) provides the following factors as guidance for determining an equitable division of marital property:

> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>
> (4) The relative ability of each party for future acquisitions of capital assets and income;
>
> (5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
>
> (B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable

distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

In the case at bar, the trial court determined that an equitable distribution should be a mathematically equal one. The evidence does not preponderate against this determination. This was a marriage of approximately sixteen years, with both parties contributing to the marital estate either as wage earner or homemaker. Husband had a history of work-related physical injuries but testified that he was capable of gainful employment. Wife had a recent history of mental health issues but testified that she was working toward employability through therapy and medication. Wife was thirty-six years old and Husband forty-nine years of age at the time of trial.

Husband's earning capacity was not shown to be significantly greater than Wife's, although he earned a substantial income working for United Parcel Service. Wife was trained and licensed as a private investigator. She testified that she earned $25 per hour as an investigator. Thus, assuming Wife enjoys a restored ability to work full-time as planned, she should be able to earn an income approaching that of Husband.

The trial court found that Wife reduced the marital estate through a course of incurring unnecessary debt and making extravagant purchases. Husband had more separate property than Wife, as prior to the marriage he owned the Rockford Walker Court property upon which the parties later built a home. No other relevant economic circumstances were shown. Based on the statutory factors and the trial court's broad discretion regarding this issue, we find no error in the trial court's overall distribution of marital property, which resulted in an

award of fifty percent of the marital estate to each party.

We shall consider, however, one additional issue with regard to the trial court's computation. Similar to the accident settlement proceeds, the trial court included the balance of the parties' 2008 tax refund, $2,170, as a marital asset. The court then deducted the entire amount from Wife's share of the marital estate because she was allowed to utilize these funds during the pendency of the divorce. For the same reason explained above, only one-half of this amount, or $1,085, should have been deducted from Wife's share of the marital estate. We therefore modify the trial court's distribution to Wife by adding one-half of the tax refund amount toward her share of the marital estate.

## X. Calculation of Child Support

The trial court found that "the amount of child support calculated and agreed to at mediation in July 3, 2009 is accurate and in compliance with the Tennessee Child Support guidelines as of the date of trial and that Mr. Ramsey has paid child support in compliance with the guidelines and provided health insurance and made other expenditures on behalf of the children." Wife contends, however, that the trial court erred in this finding because there were "countless" errors in Husband's child support worksheets and because the record does not reflect that she ever agreed to same. Wife asserts that the child support from September 2008 through April 2010 should be recalculated.

Husband contends that the parties did reach an agreement regarding child support in mediation and that the trial court credited his testimony regarding such an agreement. A review of the transcript, however, demonstrates that Husband merely testified regarding respective child support worksheets that were prepared to reflect the varying circumstances of co-parenting during the pendency of the divorce. Neither party testified that an agreement was reached in mediation regarding child support, and such an agreement is not reflected in the mediated agreement regarding co-parenting that was filed with the court.

Regardless of whether the parties reached an agreement regarding child support, the trial court must ensure that the Tennessee Child Support Guidelines are followed and that the support amount set meets or exceeds that established by the Guidelines before approving such an agreement. *See* Tenn. Code Ann. § 36-5-101; *Kesser v. Kesser*, 201 S.W.3d 636, 642 (Tenn. 2006).

In the case at bar, the worksheets submitted into evidence by Husband in support of the child support he paid during the pendency of the divorce were based on his exercising eighty days of co-parenting time with Kayla per year. Father testified, however, that during the pendency of the divorce, from September 2008 to August 2012, he only exercised one

-11-

day of co-parenting time with Kayla.  By reason of this circumstance, we find that the calculation of child support was flawed.

As relevant to this issue, the Child Support Guidelines state that the worksheets should reflect "the number of days each child spends with each parent and/or non-parent caretaker." Tenn. Comp. R. & Regs., ch. 1240-02-04-.08(2)(a)(1).  The Guidelines further state:

> For purposes of this chapter, **a "day" of parenting time occurs when the child spends** more than twelve (12) consecutive hours in a twenty-four (24) hour period **under the care, control or direct supervision** of one parent or caretaker. The twenty-four (24) hour period need not be the same as a twenty-four (24) hour calendar day. Accordingly, a "day" of parenting time may encompass either an overnight period or a daytime period, or a combination thereof.

Tenn. Comp. R. & Regs. 1240-02-04-.02(10) (emphasis added).  Based on this language, it is clear the Guidelines contemplate that the number of "days" spent with each parent, as reflected on the worksheets, will be the actual number of days spent in the care of each parent, as opposed to the number of days established under the permanent parenting plan.

Our case law regarding calculation of child support recognizes this requirement.  *See Milam v. Milam*, No. M2011-00715-COA-R3CV, 2012 WL 1799029 at *6 (Tenn. Ct. App. May 17, 2012) (reversing the trial court's calculation of child support because the evidence preponderated against the trial court's finding that Father exercised 162.5 days of parenting time with the children); *Devore v. Devore*, No. E2010-02017-COA-R3CV, 2012 WL 11266 at *5 (Tenn. Ct. App. Jan. 4, 2012) ("the court should have considered . . . Husband's actual time spent with Daughter."); *Grisham v. Grisham*, No. W2010-00618-COA-R3-CV, 2011 WL 607377 at *8 (Tenn. Ct. App. Feb. 22, 2011) (reversing the trial court's calculation of child support because the actual time the father spent with the child was not reflected on the worksheet); *Owensby v. Davis*, No. M2007-01262-COA-R3-JV, 2008 WL 3069777 at *5 (Tenn. Ct. App. July 31, 2008) ("Pursuant to the regulations, each parent enters into the Worksheet the number of days the child will spend with each parent.").

We conclude that the trial court erred in failing to consider the actual number of co-parenting days  Husband spent with Kayla when it approved Husband's calculation of child support.  Upon remand, the trial court is instructed to enter the actual number of annual days of co-parenting time exercised by Husband, rather than the number of days allowed under the permanent parenting plan, when recalculating the child support award for the period of September 2008 through April 2010.

XI.  Alimony *in Futuro*

Wife contends that the trial court erred in failing to award her alimony *in futuro*.  She argues that the disparity in the parties' incomes warranted that she be awarded alimony to allow her to maintain a standard of living comparable to that which Husband will enjoy after the divorce or which the parties enjoyed prior to separation.  Wife also asserts that her mental health condition interferes with her ability to work and is likely to cause her a limited earning capacity in the future.

"The amount of alimony to be allowed in any case is a matter for the discretion of the trial court in view of the particular circumstances, for the appellate courts are disinclined to review such discretion except in cases where it has manifestly been abused."  *Hanover*, 775 S.W.2d at 617 (citing *Ingram v. Ingram*, 721 S.W.2d 262 (Tenn. Ct. App. 1986)).  Tennessee Code Annotated § 36-5-121(i) (Supp. 2013) provides that when determining the nature and amount of an alimony award, the trial court should consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in §

-13-

36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

In this case, the trial court made the following factual findings with regard to alimony:

The Court finds that Mrs. Ramsey's request for alimony would be unjust and should be denied. The evidence established that Mrs. Ramsey quit her job and voluntarily left her marriage for another man, incurred unnecessary debt making extravagant purchases and did not act in the best interest of her family. The Court further finds that Mrs. Ramsey has substantial earning capacity and the ability to work. She is a licensed private investigator, has worked for a number of investigative agencies, turned down job offers and had returned to work prior to trial. Her tax returns and W2's reflect that her income was increasing annually having earned $32,000.00 in 2007 and more than $22,000.00 during the few months she worked in 2008. Her physician reported on June 29, 2009 that Mrs. Ramsey was only "temporarily unable to work" and Mrs. Ramsey testified that her "physical and mental health [were] fine now."

We find that the evidence supports these factual findings. Further, considering the statutory factors, we conclude that the trial court did not abuse its discretion in declining to award alimony. Wife is thirteen years younger than Husband. The proof demonstrated that Wife and Husband would enjoy similar wages if Wife were employed full-time. She testified that she was working toward this goal, addressing her mental health issues through therapy and medication. Wife presented no significant physical ailments. Husband remained able to work despite numerous work-related injuries and physical problems.

There were no young children that would require the care of a stay-at-home caregiver.

-14-

The sole substantial, separate asset of either party was the property owned by Husband, upon which the Rockford Walker Court house was built. The trial court divided the marital estate, including Husband's UPS pension, equally between the parties. Both parties contributed to the marital estate, but Wife also demonstrated a history of diminishing assets by incurring debt and overspending. Regarding fault, while Wife testified that she left the marital home because Husband was not supportive of her, she admitted having a relationship with another man.

Based on the evidence adduced at trial, we cannot find that the trial court abused its discretion in declining to award Wife alimony *in futuro*. Having so found, we need not consider the post-judgment fact that Wife has remarried and accordingly deny Husband's motion with regard to consideration of this fact.

## XII. Attorney's Fees

Wife admits that an award of attorney's fees is fundamentally an award of alimony *in solido* and that the issue should be analyzed in the same manner by this Court. We agree. *See Herrera*, 944 S.W.2d at 390; *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992). The trial court's decision regarding attorney's fees in a divorce proceeding is within the sound discretion of the trial court and will not be disturbed upon appeal unless the evidence preponderates against it. *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992). Having found no abuse of discretion in the trial court's failure to award alimony, we also find no abuse of discretion in the trial court's failure to award Wife her attorney's fees. Wife received sufficient assets in the division of marital property with which she could pay her attorney's fees.

## XIII. Conclusion

Husband's motion to consider a post-judgment fact is denied. We reverse the trial court's calculation of child support for the period of September 2008 through April 2010, based on the utilization of an incorrect number of annual co-parenting days. We direct the trial court to recalculate child support for this period, reflecting the actual number of co-parenting days. We also modify the trial court's distribution of marital property to the extent that one-half the amount of the automobile accident settlement, or $4,170.50, plus one-half the balance of the 2008 tax refund, or $1,085, be credited to Wife's share. We affirm the trial court's judgment in all other respects. Costs on appeal are assessed equally to both parties.

_____
THOMAS R. FRIERSON, II, JUDGE